JOHN G. PETTYJOHN, JR., Appellant, v. BROWN
BOVERI CORPORATION, Appellee.
—476 S.W.2d 268.

Western Section. July 19, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

James F. Pryor and L. B. Bolt, Jr., Knoxville, for appellant.

Arnett, Draper & Hagood, Knoxville, Clare & Whitehead, New York City, for appellee.

NEARN, J. This is a suit over a contract of employment.

The former employee, John G. Pettyjohn, Jr., complainant herein, filed an Original Bill in the Chancery Court of Knox County, Tennessee, charging the defendant, Brown Boveri Corporation, with a breach of the contract and averring that the corporation owed the

complainant $226,162.82 in unpaid commissions. The suit was originally brought against Brown Boveri Corporation, a New York corporation and Brown Boveri & Company, Ltd., a foreign corporation, with its principal office in Baden, Switzerland. Brown Boveri Corp. is the wholly owned subsidiary of the Swiss enterprise. A Demurrer was filed by Brown Boveri & Company, Ltd., and sustained by the Chancellor. The matter now before us is between Pettyjohn, Jr., and Brown Boveri Corporation.

The Chancellor decreed that the complainant had previously received from the defendant all compensation to which he was entitled by virtue of the employment contract, denied the relief sought, and dismissed the Bill.

Four Assignments of Error are made by the Complainant and they are:

## I.

Under the review provided by Tennessee Code Annotated 27-303, the preponderance of the evidence is against the findings and decision of the Chancellor.

## II.

The Chancellor violated the parol evidence rule by making a new contract between the parties at variance and in contradiction of the clear and express terms of written agreements going so far as to explain what the defendant must have been thinking and what defendant must have had in mind.

## III.

The Chancellor erred in admitting and considering evidence of straight salaried employees of defendant and in comparing such evidence with the complainant's commission arrangement in arriving at his decision.

## IV.

The Chancellor erred in basing his decision that the defendant could not afford to pay commissions upon defendant's "gross margin" which was defined by defendant as "selling price less commissions."

The defendant corporation is engaged chiefly in the design, manufacture, and sale of industrial electric furnace systems, including large turbo generators. These turbo generators are multi-million dollar items.

Prior to 1967, complainant's father had been a manufacturer's representative for Brown Boveri Corp. The complainant was employed by his father from 1960 until 1965 as sales engineer and promoter, and as liaison man on pre- and post-contract work. While serving in this capacity, complainant became acquainted with the Brown Boveri line as well as with Brown Boveri's customers. In 1965, complainant left his father's employ and joined the Foxboro Company as sales engineer in essentially the same type work as he previously had with his father.

In October, 1966, while complainant was employed by Foxboro, an agent of the defendant contacted complainant relative to employment with Brown Boveri Corp. During February oral discussions took place between complainant and the president of Brown Boveri Corp.,

John C. Trackman, concerning the possibility of complainant's employment by Brown Boveri Corp. Following the discussion of February, 1967, John C. Trackman wrote the complainant a letter outlining the terms of employment. Complainant's father had been notified in September, 1966, that his association would be terminated December 31, 1966.

The complainant voluntarily left employment with Brown Boveri Corp. on or about November 27, 1967. No oral or written demand for unpaid commissions was made by complainant prior to filing suit on December 15, 1969.

Both complainant and defendant rely upon the Trackman letter of February 6, 1967, as an accurate expression of the terms of employment and remuneration. However, the difficulty lies in its interpretation. Complainant maintains that under the terms of the letter, the complainant is clearly entitled to a sum in excess of $182,-000.00. The defendant maintains that under its terms, the complainant is clearly entitled to nothing. There is little or no dispute over either party's arithmetic in arriving at their respective answers to the problem. It is the formula as expressed in the letter that is in dispute.

The pertinent portion of the letter in question is as follows:

"I was truly pleased to see you last Saturday after so many years, this for a variety of reasons, the strongest being probably the reason of personal affinity.

In keeping with our understanding, I propose to summarize hereinafter the proposition I advanced orally to you.

Specifically, we would like to enlist you as a District Manager, residing in Knoxville. You will handle all the traditional Brown Boveri lines with which you are familiar, including, of course, the electric furnace and billet heating lines. In this endeavor you will work in concert with Ted Steffora, our District Manager in Birmingham, Alabama, whereby he, being a trained metallurgist and a seasoned salesman by now, will help you in the foundry business whenever required, while you might be helping him in developing the utility and industrial business in general. Since both of you happen to have, in my opinion, comparable potential, it would be best for you to pool your income derived out of commissions assigned to the territory worked jointly, which is Tennessee, Georgia, Mississippi and Alabama. Territorially, this is an immense piece of real estate. However, please realize that the operation is bound to grow beyond the one-man show aspect in Birmingham and in Knoxville.

The income derived is commission income amounting to 7½% on a sale up to $100,000.—. If the transaction happens to be a $250,000.—sale, the balance or $150,000.—carry a commission of 5%. If the transaction amounts to one million dollars, the applicable commission between $250,000.—and one million dollars is 4%, whereas it is 3% on monies in excess of one million dollars, applicable to the same sale.

Brown Boveri will guarantee you a salary which initially will amount to $1000.00 monthly. Brown Boveri

will also pay you a year-end bonus of $3000.00, financed by the surplus of the commission income over expenses.

Incidentally, pooled into the commission income is also the income derived from spare parts amounting normally to 15% of the sales price.

As I told you last Saturday, your rate of earnings is likely to increase by $1000.00 per annum during the next four years.''

This letter was written on Brown Boveri Corporation stationery, addressed to John G. Pettyjohn, Jr., and signed by J. C. Trackman as President of Brown Boveri Corporation.

It is the complainant's contention that under the terms of the Trackman letter, complainant was to receive:

(a) A guaranteed monthly salary of $1,000.00.

(b) Reimbursement for business expenses.

(c) Commissions on sales on a graduated percentage scale.

(d) An annual bonus of $3,000.00.

The defendant admits the correctness of items (a) and (b), but it is the defendant's contention, and concurred in by the Chancellor, that under the terms of the Trackman letter, it is not stated, nor was it ever intended, that complainant was to personally receive any commissions. Commissions based on the percentages as stated

in the letter were assigned to a district office as an accounting procedure. That commissions were so assigned in order to determine if such office was operating at a profit. All salaries and expenses of such office were deducted from the commission figure assigned to the office and, if the expenses were less than the commission figure, the office would operate at a profit and a bonus would be paid the district manager financed out of the surplus of the figure allocated for office commission income over expenses.

The proof is undisputed that Brown Boveri Corp. paid the complainant the monthly salary of $1,000.00 during the nine-month period that complainant was employed by the defendant. It is also undisputed that defendant paid the expenses of maintaining an office for complainant and reimbursed him for out of pocket business expenses. It is admitted that no bonus was paid. Further, the proof tends to show that if the complainant is personally entitled to the payment of commissions, defendant would owe the complainant approximately $183,000.00 in commissions.

As can be seen, the determinative issue of this controversy is whether or not the complainant was contractually entitled to personal commissions on sales.

Of course, the proper answer can be found only by the consideration by the Court of competent evidence and appellant's Assignments of Error II and III are both based on the alleged violation of parol evidence rule by the Chancellor. These two Assignments of Error attack the admission and consideration by the Court of evidence outside of the written agreement tending to show the

facts and circumstances surrounding the making of the contract and earlier negotiations with reference thereto.

We deem it appropriate to consider first the question of the alleged violation of the parol evidence rule.

In Petty v. Sloan, 197 Tenn. 630, 277 S.W.2d 355 (1954), the Court stated that when the language of a contract is plain, simple and unambiguous, the following rule found in Smithart v. John Hancock Mutual Life Ins. Co., 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063, shall apply:

> "it is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves."

Therefore, if the contract is plain, simple, unambiguous, and susceptible to only one possible interpretation, these Assignments of Error should be sustained. On the other hand, if it does not meet these requisites, the Chancellor would not be confined to the instrument alone in reaching a proper interpretation of the instrument. We hold the Trackman letter is neither plain, simple, nor unambiguous, and the Chancellor was correct in admitting evidence tending to show the circumstances of the agreement. Furthermore, the test as to the application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains same. If the testimony merely explains same, it does not violate the rule. Marron v. Scarbrough, 44 Tenn.App. 414, 314 S.W. 2d 165 (1958).

It would unduly prolong this Opinion even to summarize the many pages of testimony adduced in an attempt to explain the terms of the Trackman letter. However, after a careful consideration of same, it is our opinion that, with one possible exception, all of the evidence so introduced was merely in explanation of the document and tended neither to vary nor contradict same. The one possible exception we find is when, on cross-examination, complainant stated that Trackman orally promised him that the commissions would be paid to complainant personally. This statement was denied by Trackman. We cannot possibly see how complainant was injured by his own statement.

■ The Chancellor found, and we agree, that an examination of the Trackman letter alone reveals that it is unclear and is possibly susceptible to more than one meaning. This being true, it was the Court's duty to ascertain the intention of the parties by considering evidence of the circumstances surrounding the making of the agreement and to the best of its ability place itself in the situation of the parties at the time of the agreement in order to properly judge the meaning of the words used, and to correctly apply them. Commerce Street Co. v. Goodyear Tire & Rubber Co., 31 Tenn.App. 314, 215 S.W.2d 4 (1948). Therefore, Assignments of Error II and III are respectfully overruled.

■ Assignment of Error IV is without merit for even a cursory reading of the Chancellor's Opinion clearly shows his decision was not *based* on the fact that defendant's gross margin on a specific sale was less than the commission claimed by complainant on the specific sale. In the first ten pages of his Memorandum Opinion,

the Chancellor fully sets forth his many reasons for his conclusions and at the bottom of the tenth page, he states that there are other matters and ''Just some of the few smaller [are]'', followed by the statement that the commission claimed by the complainant on that item (specific sale) was almost double the gross profit of the company. Assignment of Error IV is overruled.

This cause is before us under provisions of Section 27-303 T.C.A. for review *de novo,* but with a presumption of the correctness of the Decree below, unless the preponderance of the evidence is contrary to that Decree. After having reviewed this record, it is our conclusion that the evidence does not preponderate against the Decree below, but preponderates in its favor. Therefore, Assignment of Error I is respectfully overruled.

In Commerce Street Co. v. Goodyear Tire & Rubber Co., supra, it is stated:

''Where the language of an agreement is contradictory, obscure, or ambiguous, of where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.''

The Chancellor found that the interpretation of the Trackman letter by the defendant was ''much more reasonable and rational than that placed upon it by the

complainant'' and we are compelled to agree. After examining the Trackman letter in the light of the circumstances of the parties, we have reached the same conclusion as the Chancellor and for many of the same reasons.

The third paragraph of the Trackman letter uses the words ''income derived out of commissions assigned to the territory'', followed in the next paragraph by the commission rate, followed in the next paragraph by a promise of a bonus ''financed by the surplus of the commission income over expenses''. If, under complainant's theory, complainant was to be paid personally all commissions mentioned in the Trackman letter, then complainant would have to pay himself a bonus out of his own commissions. This does not seem a reasonable result to us. The letter also states complainant could expect an annual cost of living salary increase of approximately $1,000.00 per year over a four-year period. In our view, this is incompatible with complainant's theory that he has earned in excess of $182,000.00 in his first nine months of employment. Further, the evidence reveals that in his prior employment with either Foxboro or his father, complainant earned no more than $12,000.00 per year. The complainant testified that he did essentially the same type of work for his father, Foxboro, and Brown Boveri Corp., and we do not find it to be either reasonable or probable that it was the understanding of the parties that complainant would go from a job paying $12,000.00 per year to one paying approximately $183,000.00 for nine months for doing the same type work.

All Assignments of Error having been overruled, the Decree of the Chancellor is affirmed and the costs of this appeal are taxed against the appellant.

Matherne and Sanders, JJ., concur.