George H. ARROWOOD and wife, Ethel
Arrowood, Plaintiffs-Appellees,

v.

Raymond WILLIAMS and wife, Marie
Williams, Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section.

July 19, 1979.

Certiorari Denied by Supreme Court
Sept. 4, 1979.

**132** ■

Lodge Evans, Elizabethton, for defendants-appellants.

Thomas E. Mitchell, James T. Milliken, Johnson City, for plaintiffs-appellees.

EWELL, Judge.

Plaintiffs below, hereinafter referred to as Arrowood, on September 22, 1958, purchased two acres of real estate located in the Fourth Civil District of Washington County, Tennessee. The east boundary of the tract was also the lower west boundary of a tract then owned by Dr. Arthur J. Willis. The original fence separating the tracts was constructed in the fall of 1943 or the spring of 1944. In 1962 Arrowood constructed across the entire eastern portion of his tract another fence approximately parallel to and from ten to thirteen feet west of the original fence in order to drive cattle between the two fences in moving them from pasture to water. On November 10, 1972, Dr. Willis sold his tract to the defendants below, hereinafter referred to as Williams; and on or about March 24, 1977, Williams removed the original fence claiming that his lower west boundary, being the east boundary of Arrowood, was along the fence constructed by Arrowood in 1962.

Arrowood insisted that his tract extended east to the line along which the original fence had been constructed in 1943–1944. Williams insisted that the tract of Arrowood extended only to the 1962 fence. The area in dispute consists of a strip of land extending 222.5 feet north and south and from ten feet two inches to thirteen feet one inch east and west. Arrowood sued in Chancery requesting (1) an order restraining Williams from trespassing, (2) a mandatory injunction requiring Williams to restore the original fence, and (3) damages occasioned by the removal of the fence. Williams answered admitting removal of the fence but insisting that the common boundary was along the westerly fence still

standing. The Chancellor found for Arrowood establishing the boundary along the line of the original fence removed by Williams and ordering Williams to rebuild the fence in its original location with the provision that Arrowood have judgment against Williams in the amount of $325.00 in the event the fence was not rebuilt in 30 days.

Williams appealed filing four assignments and eight sub-assignments of error. The assignments and sub-assignments raise four basic issues determinative of this appeal. We will address these issues separately.

■ Williams insists that this is an ejectment suit and that Arrowood cannot prevail because he failed to deraign title to a common source under which both parties claim or to a grant from the State of Tennessee or the State of North Carolina. The Chancellor treated this suit as a boundary line dispute under T.C.A. 16–606, 16–607; and we concur in this action.

The material portions of the complaint are as follows:

Plaintiffs and defendants are residents of the 4th Civil District of Washington County, Tennessee. Plaintiffs purchased property adjoining the defendants almost 20 years ago, their deed having been of record for over seven years.

Said property of plaintiffs being more particularly described as follows, to-wit:

"Beginning at a post, A. J. Willis' corner; with his line N. 22½ W. 222½ feet to a post; thence with a dividing line this day made, S. 58 W. 365 feet to a locust in the margin of a County Road; with the same S. 26½ E. 236 feet to a post; thence N. 57 E. 356 feet to the BEGINNING, containing 2 acres, more or less."

Said deed being of record in the Register's Office for Washington County at Jonesboro, Tennessee in Deed Book 319, page 565 and which property is enclosed by a fence.

There is one common line between the properties of the plaintiffs and defendants, same beginning at a post, A. J. Willis' corner with his line N. 22½ W. 222½ feet to a post.

The defendants recently took down this fence over the protest of the plaintiffs and the defendants are now claiming that they own the property of the plaintiffs a distance of 222½ feet and varying in width ten to fourteen feet. The defendants made no claim to this property until recently.

.　　　.　　　.　　　.　　　.

Plaintiffs allege that they are entitled to a restraining order against the defendants restraining them from encroaching on their property or they will suffer irreparable damage and injury and likewise they are entitled to injunctive process requiring him to rebuild the line fence to its original status between the properties and that the defendants are liable for all damages occasioned by the wilful and malicious act and conduct of the defendant Williams.

The complaint concludes with a prayer for a restraining order, a mandatory injunction, damages and general relief.

The essence of the defense offered by Williams is set forth in that portion of the answer which follows:

(I)t is admitted that there is a common line between the properties of the plaintiffs and the defendants, but the line is not located where the plaintiffs claim that the line is located. There were two fences running parallel and about ten feet apart which provided a lane for access to plaintiffs' land. The westerly fence line is the line between the properties of the parties, and it is still standing. Defendant Raymond Williams removed the easterly fence line which was and is located upon defendants' land and which fence was not the division line between the properties of the parties.

In the course of the cross-examination of plaintiff, George Arrowood, by the attorney for Williams, the following exchange occurred:

"Q. . . . Now actually, the two as you testified here, there are two fences along there, and the two fences made a little lane for this distance that you're disputing, isn't that right, Sir?

"A. Yeah, that's right.

"Q. Two fences. So the question is which fence is the line? That's what the dispute is about, isn't it?

"A. That part of it up there is, yeah."

The foregoing succinctly summarizes the essence of this litigation which, in fact, is a boundary line dispute. It follows that under T.C.A. 16–607 Arrowood did not have the burden of proving a complete deraignment of title from a state grant or a common source but was only required to prove clearly that he was the true owner of the land as described in the complaint. Excepting the location of the east boundary, this was admitted by Williams in the answer. Further, the proof establishes the fact that both tracts were owned by Vergie French Poore and husband, R. W. Poore, and sold by them to separate parties at public auction in 1943. Therefore, title to the separate tracts was in fact deraigned to a common source. This deraignment with respect to the Williams tract was established formally by the filing of copies of the legal instruments constituting the chain of title. With respect of the Arrowood property, the deraignment was proven by the uncontroverted testimony of witnesses.

■ The Chancellor in his Opinion, given orally at the conclusion of all the proof in the case, stated in part, as follows:

The Plaintiff in this case proved beyond any doubt that he had been in possession of the property for more than seven years under the deed which he acquired on the 22nd day of September, 1968 (sic: 1958). And that George H. Arrowood and wife, Ethel Arrowood, had used the property openly, notoriously, adversely and hostile to the rest of the world. That they had farmed it and used it as their property and that the old fence row was the boundary line. The proof shows that under seven years open, adverse, notorious possession and that they had paid taxes on the same and that they had held out to the world that it was their property; that they had used this lane for the movement of cattle from the D. W. Whaley property

over to the property of his brother-in-law and to his own property, that is, to George H. Arrowood and wife, the Plaintiffs' property. This constitutes such deeds and acts and open, notorious and adverse possession under a color of title and a deed recorded so as to establish an absolute ownership of the same by adverse possession under color of title and under a seven year's deed.

Williams insists that the Chancellor erred in finding that Arrowood had taken title to the property in question by adverse possession for a period of seven years because the applicable statute (T.C.A. 28–201) requires Arrowood to prove that he is claiming under a conveyance "purporting to convey an estate in fee" and further that such conveyance had been recorded in the Register's office for the full term of seven years. Williams complains that Arrowood failed to allege and prove facts sufficient to comply with the foregoing statutory requirements. From a thorough examination of the entire record in this case we find there is merit to this contention.

While it is apparent that during the course of the trial there was available to the attorneys for the respective parties and the witnesses a copy of the deed whereby Arrowood acquired title, such copy was not made an exhibit in the case and was not read into the record. It is clearly established that Arrowood acquired title by deed dated September 22, 1958, from The Banking & Trust Company. In order to finance the purchase Arrowood obtained a loan secured by a trust deed on the subject real estate. The original of the trust deed was introduced and identified as exhibit one. The certificate of the Register of Washington County on the trust deed reflects that it was recorded on September 23, 1958. On the first page, following a legal description of the two acre tract, there appears the following:

> And being the same property conveyed to The Banking & Trust Company, Jonesboro, Tenn., by Trustees' Deed dated August 21, 1958 (B. P. Roach and W. C. Allison, Trustees), and of record in the Registry for Washington County, Tennes-

see, in Deed Book 319, page 563, to which reference is hereby made.

> And being that same property conveyed to the parties of the first part by deed from The Banking & Trust Company, dated September 22, 1958, and of record in the Registry aforesaid in Deed Book 319, page 565, to which reference is hereby made.

In the first paragraph of the trust deed George H. Arrowood and wife, Ethel Arrowood are identified as "parties of the first part".

From the foregoing it is clear that a conveyance from The Banking & Trust Company to Arrowood was recorded on or before September 23, 1958, and, consequently, has been of record for more than seven years. However, nowhere in the record is it proven that the conveyance purports to convey an estate in fee.

Williams also insists that the Chancellor erred in stating in his opinion the following: "The plaintiffs in this case have been in possession of the property for more than twenty years and have had their deed of record for more than twenty years." This is obviously an erroneous statement. The proof shows that the property was acquired by Arrowood by deed dated September 22, 1958. This suit was tried below on July 31, 1978.

With due regard to the failure of Arrowood to prove the quantity or quality of the title conveyed to him by The Banking & Trust Company and the fact that Arrowood had been in possession of the strip of land in question for less than twenty years, we have carefully reviewed this case *de novo* upon the record of the Trial Court as required by T.C.A. 27–303, mindful of the fact that the case comes to us accompanied by a presumption of the correctness of the judgment or decree of the Trial Court, unless a preponderance of the evidence is otherwise. *Edwards v. Edwards*, 501 S.W.2d 283 (Tenn.App.1973); *Davis v. Bank of Illinois*, 561 S.W.2d 144 (Tenn. 1978); *Pettyjohn v. Brown Boveri Corporation*, 63 Tenn.App. 546, 476 S.W.2d 268

(1971); *Tipton County Board of Education v. Dennis*, 561 S.W.2d 148 (Tenn.1978). We find that notwithstanding the above noted deficiencies the judgment of the Trial Court is supported by a clear preponderance of the evidence in the case.

▮ The Judgment entered by the Trial Court decrees, among other things, the following:

That the dividing line between the property of plaintiffs and the property of the defendants, being referred to as North 22½ West 222½ feet, follows the old fence, a portion of which the defendants removed and that said old fence has been the dividing line between the properties for more than 20 years without question until defendants made claim thereto sometime in 1976 or 1977.

The foregoing is supported by the uncontroverted proof in this case. The Arrowood property was conveyed by Poore to John Whaley, father of Ethel Arrowood, in 1943. In 1952 John Whaley conveyed a portion of the property not here in question to D. W. (Dovie) Whaley, brother of Ethel Arrowood, and the two acres here in question to Elmer Whaley. Elmer Whaley mortgaged the property to The Banking & Trust Company to secure a loan upon which he ultimately defaulted resulting in foreclosure. The Banking & Trust Company bought the property at foreclosure sale and on September 22, 1958, conveyed it to George and Ethel Arrowood.

The Williams property was conveyed by Poore to M. M. English, father of Marie Williams, in 1943. English conveyed the property to Dr. Arthur J. Willis in 1949, and on November 10, 1972, Dr. Willis conveyed the property to Raymond and Marie Williams.

In June of 1943 when all of the property in question was owned by Poore and before the auction sale there was a survey, following which the corners of the respective parcels were marked. In the fall of 1943 or the spring of 1944 Whaley, with the knowledge and consent of English, constructed a fence along their common boundary. English participated to the extent of furnishing some posts. This fence remained in place, undisturbed, until March 24, 1977, when Williams removed that portion separating his property and the property of Arrowood. The fence had been universally recognized as a boundary line fence for a period of approximately thirty-three years. During that time Arrowood and his predecessors in title had been in actual, open, notorious, continuous, adverse and peaceable possession of the property in dispute separated by the fence from the property of Williams and his predecessors in title. We find that Arrowood has shown by clear, positive and uncontradicted proof that the property in question was held adversely for more than thirty years and that this showing supports the judgment of the Trial Court notwithstanding the absence of proof as to the quantity or quality of title conveyed to Arrowood by The Banking & Trust Company. We are of the opinion that each of the parties in the chain of title and succession of conveyances, from John Whaley to Arrowood had the right to tack his or her possession to that of his or her predecessor in title for the purpose of acquiring title by twenty years adverse possession. See *Derryberry v. Ledford*, 506 S.W.2d 152 (Tenn.App. 1973); *Peoples v. Hagaman*, 31 Tenn.App. 398, 215 S.W.2d 827 (1948); *Staub v. Hampton*, 117 Tenn. 706, 101 S.W.2d 776 (1907).

Williams also insists that the Trial Court erred in ordering him to restore the fence or pay Arrowood the sum of $325.00. In his complaint Arrowood prayed for a mandatory injunction requiring Williams to restore the fence to its original position and for damages. In the Judgment the Court decreed as follows:

That the defendants, without any right whatsoever, tore down a portion of the line fence between the properties of plaintiffs and defendants, and the defendants shall, within thirty days from this date, rebuild said fence as it was prior to the same having been torn down, and in exactly in the same place that if was, in such condition as is satisfactory to and approved by the Court. If the defendants do not comply with this provi-

sions, then the plaintiff shall recover from the defendants the sum of Three Hundred Twenty-five ($325.00) Dollars, for the purpose of rebuilding the fence in the same place the same was located prior to the defendants' destruction thereof.

■ Under the pleadings and proof we find that the Chancellor acted properly in so decreeing. The only proof in the record as to the cost of restoring the fence came through the testimony of George Arrowood who estimated that the cost would be approximately $325.00. The Trial Court did no more than restore Arrowood to his original status.

All assignments and sub-assignments are overruled and the Judgment of the Trial Court is affirmed. This cause is remanded to the Chancery Court of Washington County for the enforcement of its Judgment. The costs of appeal are assessed against the appellants.

MATHERNE and NEARN, JJ., concur.