**W.F. WILKERSON and Richard M. Wilkerson, Plaintiffs-Appellees,**

v.

**B.W. WILLIAMS, Roy Crunk and wife, Carolyn Crunk, Defendants-Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 17, 1983.

Application for Permission to Appeal Denied Jan. 30, 1984.

Robert E. Alderson, William C. Bell, Jackson, for plaintiffs-appellees.

W.W. Lackey, Savannah, for defendants-appellants.

CRAWFORD, Judge.

This is a declaratory judgment action filed to obtain a declaration of the rights and obligations of the parties to a real estate lease agreement. From an adverse ruling defendants appeal.

The lease agreement in question is between defendant, B.W. Williams, Trustee, as lessor, and plaintiffs, W.F. Wilkerson

and Richard Wilkerson, as lessees. Defendants, Roy Crunk and wife, Carolyn Crunk are the real parties in interest, having previously conveyed the real estate involved to Williams as trustee of a Clifford Trust for the benefit of their children. In keeping with the terminology used in the lease agreement, we will refer to the defendants collectively as Landlord and plaintiffs collectively as Tenant.[1]

Landlord owns property used as a grocery store, and Tenant operated a grocery business on the property. Landlord leased the property to the Tenant and the lease agreement contained the following clause which is the subject of this suit:

27. SUBLEASE AND EQUIPMENT. Concurrently herewith, or at any time hereafter, Tenant may sublet the premises to David Kendrick for the Primary Term hereof and may give and grant to the said David Kendrick the same options and right of first refusal as are provided in Section 4 hereof. During the Primary Term of such sublease and any extension thereof, should the said David Kendrick default in any payment owed to The Lewis Grocer Company, and if at the time of such default Tenant refuses to assume said indebtedness and cure such default; and if a third party assumes the sublease to Kendrick or purchases the business operated by Kendrick in the Leased Premises or assumes Kendrick's indebtedness to The Lewis Grocer Company, then the monthly rental by the Tenant to Landlord hereunder shall be increased to $2,000.00 per month.

Simultaneously with the execution of the lease agreement containing Paragraph 27, Tenant did, in fact, sell his grocery business to Kendrick and executed a sublease to Kendrick. The sublease to Kendrick provided that the same rights and obligations in assigning and subletting contained in the original lease would apply to the sublease and in essence the sublease stated that consent by the Tenant to sublease is required, but such consent shall not be unreasonably withheld.

At the time the original lease was executed, both Landlord and Tenant were represented by counsel, although it appears the lease agreement was not drawn by counsel for either party. The lease and sublease were prepared by the attorney for Lewis Grocer Company, a wholesale supplier in Mississippi, who for business purposes was interested in the continuation of a viable business in the premises.

In the fall of 1981, Kendrick had apparently decided that he wanted to sell the business and sublease the grocery property to a third party and requested consent for such a transaction from Tenant. Tenant advised Kendrick that he would agree to the subletting, but in exchange therefor demanded increased monthly rental. Kendrick obtained lawyer Dennis Plunk to represent him, and by letter dated November 2, 1981, Plunk advised Tenant that a rent increase was unjustified because there was no provision for such and that a consent to subleasing could not be withheld without a reasonable basis. In reply to this letter, lawyer Plunk received a letter from lawyer Terry Abernathy on behalf of Tenant dated November 3, 1981, which in part stated: "I am certain that you are aware that the original lease on the involved premises requires an automatic increase in Mr. Wilkerson's monthly rent in the event of a sublease of the nature that is presently proposed, and it certainly seems fair and reasonable that Mr. Wilkerson could likewise expect an increase in the rent that he will be receiving." Subsequent negotiations were carried on between Plunk and Abernathy and then with Abernathy's consent between Plunk and Tenant. Kendrick was proposing to sell his business and lease to a Mr. Clausel and subsequently completed the transaction by agreeing to pay Tenant. Landlord likewise consented to the sublease thinking the rent under the primary lease would be increased $250 per month. Tenant filed this suit for declaratory judg-

---

**1.** This designation is used for clarity even though Richard Wilkerson was the only plaintiff that testified and Roy Crunk was the only defendant that testified.

ment after Landlord demanded the additional rent.

The trial court held that the Landlord was not entitled to the increased rental payment by construing Paragraph 27 as requiring the occurrence of *three* conditions to trigger a rent increase. The conditions are (1) a default in payments owed by Kendrick to Lewis Grocer Company, (2) a failure of Tenant to assume the indebtedness and cure the default and (3) any one of the other three conditions set out in Paragraph 27. The trial court stated in its opinion that the clause in the contract was not ambiguous, although extraneous evidence was relied upon by the court to reach the ultimate conclusion. We disagree with the trial court and believe the clause in the contract is ambiguous and therefore extraneous evidence was admissible to facilitate the construction and interpretation thereof.

Since the evidentiary questions raised by the issues of Landlord are intertwined with the issue of whether the evidence preponderates against the finding of the trial court, we will consider the latter issue first, ruling as necessary on the evidentiary issues.

▮ Tenant testified that Paragraph 27 of the primary lease was a subject of negotiations between him and Landlord. He further testified that he did not object to Kendrick subleasing the property to Clausel, but he wanted an increase in rent before consenting to the sublease. He eventually consented to the amount of $250 increase. He admitted that in his negotiations with Kendrick concerning Kendrick's sublease to Clausel and the proposed rental increase, he was represented by attorney Terry Abernathy. Mr. Abernathy as attorney for Tenant wrote a letter to attorney Dennis Plunk representing Kendrick, in which he stated:

I am certain that you are aware that the original lease on the involved premises requires an automatic increase in Mr. Wilkerson's monthly rent in the event of a sublease of the nature that is presently proposed, and it certainly semms [sic] fair and reasonable that Mr. Wilkerson could likewise expect an increase in the rent that he will be receiving.

Tenant states that he did authorize Mr. Abernathy to write a letter, but he denies that he authorized him to make the statement contained in the letter. He asserts that Mr. Abernathy was authorized to negotiate the sublease, but was not authorized to negotiate or make any deal with Landlord. Although the letter from Abernathy was introduced by Tenant in his proof in chief, Mr. Abernathy was called by Tenant as a rebuttal witness. One of the issues presented for review by Landlord is whether it was improper to allow Mr. Abernathy to testify in rebuttal. This matter is one that rests solely within the discretion of the trial court, and we can't determine from the record in this case that there was an abuse of discretion. *See Johns v. Caldwell,* 601 S.W.2d 37 (Tenn.App.1980). However, it is interesting to note that Abernathy did not rebut the contents of the letter. Primarily the testimony concerned the fact that the letter was not meant for the benefit of Mr. Crunk, the Landlord.

Landlord testified that he had no objection to the proposed sublease by the subtenant Kendrick to Clausel, as long as he got his increase in rent which he felt was provided by the lease agreement. He did not have any conversations with Tenant concerning the increase but his conversations were with Clausel and attorney Plunk representing Kendrick. Landlord asserts the court was in error in excluding the testimony of Landlord as follows:

Q. (by Mr. Lackey) Mr. Crunk, was there any discussion at any time, and I believe you said there was, with respect to a part of paragraph number 27?

A. Yes, sir.

Q. What part?

A. The part that if the property was ever leased or subleased, then my rent would increase.

Q. Was there ever any discussion or ever even any mention of any kind ·about the primary—the Kendricks

should default in the payment, or anything of this nature?

A. No, sir.

Mr. Alderson: I would ask the Court—

The Court: We will let it—it will be a continuing objection as to any negotiations at or contemporaneous with the execution of the lease, prior to or contemporaneous with the execution of the lease.

Q. (by Mr. Lackey) You said that had never been discussed?

A. Right.

Q. When is the first time you ever became aware of any of that, that particular part of it?

A. The day we met in Mr. Ron Harmon's office.

Q. And it was in the document?

A. Yes, sir.

Q. Mr. Crunk, at whose suggestion was this provision again, I realize this is an offer of proof, if the court please. The Court: All right.

Q. At whose suggestion was this provision about the $250.00 a month increase put in there?

A. Mr. Richard Wilkerson's.

■ We feel that the trial court was in error in excluding this testimony as it does appear to be relevant on the question of the intention of the parties.

■ Although a contract cannot be varied by oral evidence, the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties are matters properly to be looked to by the court in arriving at the intention of the parties to the contract. *See Kroger Co. v. Chemical Securities Co.*, 526 S.W.2d 468 (Tenn.1975); *Jeffers v. Hawn*, 186 Tenn. 530, 212 S.W.2d 368 (1948).

In *Pettyjohn v. Brown Boveri Corporation*, 63 Tenn.App. 546, 476 S.W.2d 268 (1971), Judge Nearn, in considering an alleged violation of the parol evidence rule in an employment contract case said:

■ In *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1954), the court stated that when the language of a contract is plain, simple and unambiguous, the following rule found in *Smithart v. John Hancock Mutual Life Ins. Co.*, 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063, shall apply: "it is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves."

Therefore, if the contract is plain, simple, unambiguous and susceptible to only one possible interpretation, these Assignments of Error should be sustained. On the other hand, if it does not meet these requisites, the Chancellor would not be confined to the instrument alone in reaching a proper interpretation of the instrument. We hold the Trackman letter is neither plain, simple, nor unambiguous, and the Chancellor was correct in admitting evidence tending to show the circumstances of the agreement. Furthermore, the test as to the application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains same. If the testimony merely explains same, it does not violate the rule. *Marron v. Scarbrough*, 44 Tenn.App. 414, 314 S.W.2d 165 (1958).

*Id.* 63 Tenn.App. at 554, 476 S.W.2d 268.

We, like Judge Nearn in *Pettyjohn, supra*, find Paragraph 27 of the lease before us "neither plain, simple, nor unambiguous."

Clausel, the purchaser of the business and sublessee from Kendrick testified that since the increase in rent made by Tenant would be his responsibility, he conferred with Tenant concerning this. He testified that Tenant advised him that Tenant was going to be charged an increase in rent and therefore had to pass that increase along. Tenant denied making such a statement to Clausel.

Attorney Dennis Plunk testified that he represented Kendrick in connection with

the subleasing by Kendrick to Clausel. Concerning the letter he received from Attorney Abernathy, we quote from the record:

Q. Okay; then could you tell us whether or not Mr. Abernathy verbally indicated the same thing as contained in the letter with respect to that rent?

A. I can't testify to any exact statement, I couldn't quote, but yes, sir, the gist of the letter contains what we discussed in our conversation, or in the negotiation, but he revolved around the lease between Mr. Crunk and I believe Mr. Wilkerson going up at some point in time $250.00; because I know I was authorized only for a sublease increase to $250.00, and if it was more than that, we were going to have to get back with the prospective purchaser.

Q. Well, I'm not so much interested in how much rent was to be paid to Mr. Wilkerson—I'm talking about how much Mr. Wilkerson was going to have to pay Mr. Crunk?

A. Yes, sir; that's what I'm talking about—I'm sorry if I'm not clear, but that was the reason for it, yes, sir; yes, sir, it was the reason for it—because my client's understanding, when he came to me, when the rent would increase, and of course my client's position was he didn't want to pay any more to Mr. Wilkerson, or his prospective purchaser pay a dime more to Mr. Wilkerson than he had been responsible for, and the reason that the $250.00 came up, was because he was recognizing that Mr. Wilkerson would be having to pay $250.00 more, and out of fairness, and again the reason being that he would not go to court to file a declaratory judgment to interpret this language and it all revolved around the consent clause that I had researched.

Mr. Crunk further testified concerning his conversation with Tenant:

Q. When you talked later, after that, you talked to Mr. Wilkerson on the seventeenth and I believe it is your testimony that you don't remember that he made any statement to you to the effect that his rent to Crunk went up?

A. I can remember—to answer your question, I can't remember an exact statement from him, that we discussed the lease between Mr. Crunk and Mr. Wilkerson, but in explanation of that, I do remember that we were discussing then the refusal of consent and the amount and in our conversation we reflected back to what Mr. Abernathy had written on his behalf, that they were willing to accept $3000.00 a month, and I talked to him on the seventeenth and I had written this down, when I called him at the Big Star at 901-645-3244, that Mr. Wilkerson wants $2800.00. I think that this was the conclusion of our conversation, and really our conversation turned on the fact of the amount of rent, and in talking with him, I do know that we were talking about the $250.00 increase and the reason for it. I expressed that, and this was my client's reason for asking, or would be willing to go $250.00 higher because he understood that Mr. Wilkerson was going to have to pay that to Mr. Crunk.

At the conclusion of the proof the court took the matter under advisement and as we have heretofore noted held that Paragraph 27 required the following, in order to obtain an increase of rent: Kendrick must be in default and there must be a failure on the part of Tenant to cure the default, and in addition there must be one of the other elements present, i.e., assumption by a third party of the sublease to Kendrick, or a purchase by a third party of the business operated by Kendrick or assumption by a third party of Kendrick's indebtedness to the Lewis Grocery Company. The court relied upon the fact that in the wording of

the paragraph, the word "and" is used after the word "default" and that this conjunction necessitated an interpretation that all of the conditions joined by the conjunction "and" must occur in order to cause a rent escalation. On the other hand, it is the assertion of Landlord that the placing of the semicolon after the word "default" indicates the conclusion of the first two part condition and the beginning of the other three conditions.

■ It is quite interesting that Tenant would not consent to a sublease by Kendrick until he received an increase in rent. He ultimately agreed to the amount of $250 being the exact amount of increase provided by the lease agreement between Landlord and Tenant. Tenant's lawyer, Abernathy, wrote a letter stating that the primary lease requires an automatic increase in "Mr. Wilkerson's monthly rent in the event of a sublease." Tenant contends that he is not bound by this representation. We disagree. The letter from Abernathy is most significant. Tenant contends that the attorney was only employed to handle negotiations concerning the sublease, and, therefore, had no authority to make such a statement concerning the rent in the original lease. Tenant misses the point or just will not recognize the point. Tenant has been given a "demand" from an attorney for Kendrick promising dire consequences if Tenant persists in his refusal to consent to a sublease without an increase in rent. Abernathy's letter gives a logical explanation justifying an increase in rent, thus indicating that Tenant's withholding of consent had a "reasonable basis." It is inconceivable to this court that the attorney would make such a statement without having first read the lease, unless, of course, he was told by his client that the lease so provided. In either event the testimony is convincing evidence of acts on the part of Tenant concerning his interpretation of the lease agreement. It is difficult to resist the comment at this point that the proof indicates Tenant is "talking out of both sides of his mouth." He tries to justify a rent increase in order to obtain his consent to sublease on the basis that he himself will have an increase in rent. On the other hand, he contends the primary lease does not require an increase in rent. We have no hesitation in holding that the letter from this lawyer is an admission of the agent concerning the interpretation placed on the lease by his client and this was competent evidence against the Tenant. The admission, of course, is not conclusive but subject to explanation or denial. *See Home Indemnity Co. of New York v. Bogue*, 168 Tenn. 493, 79 S.W.2d 580 (1935). In this case, there was no satisfactory explanation nor a denial.

■ Landlord testified he gave this consent to the sublease between Kendrick and Clausel on the assumption that he was to receive the additional rent and in fact looked for it on the next rental payment date, but to no avail. Under these circumstances we have very strong evidence as to the interpretation placed upon the terms of this Paragraph 27 and feel that this calls for the application of the doctrine of practical construction. As pointed out in *Sherman v. Cate*, 159 Tenn. 69, 16 S.W.2d 25 (1929), "The construction of the parties is always persuasive." In *Canton Cotton Mills v. Bowman Overall Co.*, 149 Tenn. 18, 257 S.W. 398 (1924), this court said:

> The rule of "practical construction" is one now widely recognized and is thus well-stated:
>
> "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered." (Citations omitted).

*Id.* 149 Tenn. at 29, 257 S.W. 398.

We think it is most convincing that even though Tenant had no provision for an increase in rent in the sublease with Kendrick, he instigated the controversy by requiring such an increase in rent. There are just too many factors indicating the intention that a rent increase is triggered by a relinquishment by Kendrick of control of the premises regardless of Kendrick's financial responsibility. We feel the correct

interpretation of Paragraph 27 is (1) when Kendrick defaults and Tenant does not cure the default, there can be an increase in rent; (2) if Kendrick allows a third party to assume his sublease there can be an increase in the rent; or (3) if Kendrick allows a third party to purchase his business there can be an increase in the rent; or (4) if Kendrick allows a third party to assume the indebtedness he owes to Lewis Grocery Company there can be an increase in the rent.

In *Commerce Street Co. v. Goodyear Tire & Rubber Co.*, 31 Tenn.App. 314, 215 S.W.2d 4 (1948), the court, quoting from 12 Am.Jur. 792 Contracts, § 250 states:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred."

215 S.W.2d at 11.

We feel the interpretation we have placed on this clause of the lease is fair, customary and such as prudent men would naturally execute. The evidence preponderates against the finding of the trial court and we declare that Landlord is entitled to the increase in rent provided by Paragraph 27 of the lease. Therefore, the judgment of the trial court is reversed, and this cause is remanded to determine the amount of accrued rent due Landlord and such other proceedings as necessary. The costs of the appeal are adjudged against the appellee.

NEARN, P.J. (W.S.), and HIGHERS, J., concur.