COMMERCE STREET CO., INC. v. GOODYEAR TIRE
& RUBBER CO., INC. et al.—215 S. W. (2d) 4.

Middle Section.   July 31, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.

E. J. Walsh and W. P. Cooper, both of Nashville, for appellant.

F. A. Berry and Judson Harwood, both of Nashville, for appellee Goodyear Tire & Rubber Co., Inc.

Bailey & Powell, of Nashville, for appellee American Property Co., Inc.

HICKERSON, J.   Commerce Street Company, Inc., (Commerce) filed the bill against Goodyear Tire & Rubber Company, Inc., (Goodyear) and American Property Company, Inc., (American) for a threefold purpose: (1) As an unlawful detainer suit against Goodyear to recover possession of realty located in Nashville, Tennessee, being the triangle made by the intersection of Broadway and West End Avenue; (2) As a suit to declare the rights of the parties in connection with the lease contract under

which Goodyear held possession of this realty; and (3) For damages against American upon its covenant that the realty was unincumbered, if the court failed to sustain the unlawful detainer suit.

By answer, Goodyear pleaded that it was in rightful possession of the realty under its lease contract.

American pleaded, by answer, that it sold and conveyed this realty to Commerce subject to the lease to Goodyear; and it was not, therefore, liable to Commerce on account of the lease.

The chancellor refused to sustain the bill as an unlawful detainer suit; and, also, refused to decree damages against American on the covenant in its deed to Commerce that the realty was unincumbered. The result was a decree denying Commerce any relief and dismissing its bill.

Commerce appealed to this court.

There is very little conflict in the testimony. The parties differ sharply in regard to the ultimate questions to be determined from the testimony.

On February 1, 1933, American Property Company, predecessor of American, entered into a lease contract with Goodyear Service, Inc., predecessor of Goodyear, involving the realty in question in this suit. This original lease was kept in force by its own terms and by extensions until December 31, 1945.

The negotiations for the lease to begin January 1, 1946, were carried on by correspondence. Four letters were written which are, as follows:

"October 9, 1945

The Goodyear Tire & Rubber Company, Inc.
Akron 16, Ohio.
Attention of Mr. L. A. Joel,
                Real Estate Department.

Gentlemen:

I was sorry that on your last visit to Nashville to discuss the Lease at Sixteenth and West End Avenue that I was out of the city.

I think our Company would be willing to extend the Lease on the above property on the same basis as the extension of the Lease for the Year 1945 with the exception that the monthly rent be increased from Six Hundred Fifty No/100 ($650.00) Dollars per month to Seven Hundred Fifty No/100 ($750.00) Dollars per month.

This reduction in the rent over the past two years was agreed upon by us due to the fact that through the government regulations your business was considerably reduced in volume, but the Year 1946, business should revert to the normal basis that was prevailing prior to the reduction in the Lease.

In so far as the leak in the roof is concerned, we will be glad to see that this is corrected, even if it is necessary to put on a new roof.

In regard to your proposal for an option for further extensions of the Lease for three one year periods, we see no objections to this provided that you would agree to a Sales Clause in case we should dispose of the property, under which conditions we could not grant option for extension beyond any current Lease that existed, as this would be a matter for the new owner to determine in case of sale.

If the conditions outlined in this letter are satisfactory to you, kindly advise, and I will take this matter up with the Board of Directors and attempt to secure favorable action.

Very truly yours,

American Property Company, Inc.

James S. Frazer,

Sec'y-Treas.''

"October 13, 1945

Mr. James S. Frazer, Secy-Treas.,
American Property Company, Inc.,
1518 Broad Street
Nashville, Tennessse.

Dear Mr. Frazer:

This will acknowledge receipt of your letter of October 9th. We have given careful study and analysis to the potentialities of our business conducted in the 16th and West End property, in an attempt to ascertain whether it can hope to prosper at the rental of $750.00 per month quoted by you. Our most optimistic calculations prove that it can not, unless there are developments and possibilities that we can not foresee at this time.

As you say, the reduction in rental from the past high levels was made by you because of your recognition that our business was subject to strict Government regulations. We appreciate this past consideration but the regulations are still in effect, we do not have a free hand in the conduct of our business, and to a large extent the same conditions prevail that existed when the rental was re-arranged a couple of years ago.

We are willing to extend the lease for another year under the present rental rate and it is our feeling that you are fully protected by the percentage clause. If there is a sharp upturn in our sales volume, it will produce additional rental, and if there is not, we are in no position to pay more than the present rate. It may be of interest to you to know that on the 1944 volume our profit was 6%, which will give you some indication as to how close we are operating here even under the most favorable competitive conditions.

With the above facts in mind, it will be appreciated if

you will look at this situation again and attempt to see the logic of our position.

Very truly yours,

The Goodyear Tire & Rubber Company, Inc.

/s/ L. A. Joel

Real Estate Department.''

"October 15, 1945

The Goodyear Tire & Rubber Company, Inc.,
Akron 16, Ohio.
Attention of Mr. L. A. Joel,

Real Estate Department.

Gentlemen:

Answering your letter of October 13th, I do not believe it would be possible for me to get the Board of Directors to accept your proposition on the property 16th & West End Avenue.

If you will authorize me to submit a proposition from you for Seven Hundred & No/100 ($700.00) Dollars per month rental with the Three Percent (3%) Clause, and with an option to extent the Lease for Three One Year Periods at Seven Hundred Fifty & No/100 ($750.00) Dollars base rent, and the Three Percent (3%), I will advise you immediately their decision.

Very truly yours,

American Property Company, Inc.

James S. Frazer,

Sec'y-Treas.''

"October 29, 1945

The American Property Company, Inc., 1518 Broadway, Nashville, Tennessee.
Gentlemen:

Please refer to that certain lease dated February 1, 1933, between the American Property Company (whose

interest has been acquired by you), as Lessor, and Goodyear Service, Inc., (whose interests have been assigned to the undersigned) as Lessee, covering our occupancy of the premises located at Broadway and West End Avenue, Nashville, Tennessee, and more specifically described in said lease. The term of this lease has been extended by various letters to expire December 31, 1945.

We now offer to extend the term of this lease for one year commencing January 1, 1946, and ending December 31, 1946, under the same terms and conditions specified in said lease and subsequent extensions and amendments thereof except that during this extended period the rental shall be at the minimum monthly rate of $700.00, provided, however, that if 3% of our total retail sales, less deductions for merchandise returns and allowances and all adjustments and discounts applicable to and actually applied to such sales, shall be in excess of $8,400.00, then we shall pay you an additional rental for the term during which such sales were made the sum equal to such excess. It is understood that within a reasonable time after expiration of this lease a statement will be submitted to you showing the amount of said sales.

As a part of the consideration for the payment by Lessee of the rental provided herein, Lessee shall have the exclusive right to use the roof of the building in which the demised premises are located, for its own advertising purposes.

We further propose that we shall have the option to extend this lease and all terms and conditions thereof for three further periods of one year each upon written notice to you not later than sixty days prior to the expiration of the original or any extended term, except that the rental during such extended period shall be at the minimum monthly rate of $750.00 provided, however,

that if 3% of our total retail sales, less deductions for merchandise returns and allowances and all adjustments and discounts applicable to and actually applied to such sales, shall be in excess of $9,000.00, then we shall pay you as additional rental for the term during which such sales were made, a sum equal to such excess.

In the event you shall, during any extended period referred to in the preceding paragraph, enter into a bona fide agreement for the sale of the herein demised premises, you may terminate this lease by advising the undersigned in writing of your intention to so terminate at least ninety days prior thereto.

The return to us of the attached carbon copy of this letter, bearing your signature, will indicate without further formality your acceptance of this offer.

> Very truly yours,
> The Goodyear Tire & Rubber Company, Inc.
> By J. E. Mayl
> Vice President
> Attest: W. M. Menty
> Assistant Secretary.''

American agreed to this lease contract; and Goodyear continued in possession of the premises under it, beginning January 1, 1946.

On August 24, 1946, James S. Frazer, representing American, and I. Alford, representing Commerce, entered into a contract of sale of this realty.

Pursuant to that contract of sale, American executed and delivered a deed to Commerce conveying the realty to it on September 16, 1946.

On September 17, 1946, American wrote Goodyear this letter:

"September 17, 1946

Goodyear Tire & Rubber Company, Inc.,
Real Estate Department,
Akron, Ohio.

Gentlemen:

Under the extended lease signed Oct. 29, 1945 there was a termination clause providing that we notified you in writing in case of sale of the property.

This letter is to advise that we have sold the property which you are now occupying at West End Ave. and Broad St., Nashville, Tenn. to the Commerce Street Company, Inc., 3724 Richland Ave. as of Sept. 16, 1946.

We wish to express our appreciation for the long years of pleasant business relationship.

Very truly yours,
American Property Co., Inc.
James S. Frazer,
Secretary & Treasurer."

On January 2, 1947, Commerce wrote a letter to Goodyear notifying it that the lease under which it held would be cancelled ninety days after January 2, 1947. We quote the letter:

"January 2, 1947

Goodyear Tire & Rubber Company, Inc.,
Akron 16, Ohio.

Gentlemen:

Please refer to your letter dated October 29, 1945, addressed to American Property Company, Inc., 1518 Broad Street, Nashville, Tennessee, relating to your occupancy of the premises in the triangle, bounded by Broad Street on the south; West End Avenue on the north, and seventeenth Avenue North on the west, Nashville, Davidson County, Tennessee.

Please take notice that these premises have been sold and conveyed, pursuant to a bona fide agreement by the said American Property Company, Inc., to the undersigned, Commerce Street Company, Inc.; see the deed of conveyance dated September 16, 1946 and recorded on September 17, 1946 in Book 1217, page 600, Register's Office for Davidson County, Tennessee.

You have had notice of cancellation and termination of your lease given by letter of the American Property Company, Inc., of date September 17, 1946, and by letter of this Company dated October 5th, 1946, in which it then insisted and still insists that your lease and right of possession terminated on December 16, 1946, and now, without in any manner whatsoever waiving its position, but out of abundant precaution we now give this notice, and you are notified that any lease or right of occupancy, if any, you may have to the said premises, is terminated, cancelled, and ended ninety days from receipts of this notice.

This Company demands possession of the said premises accordingly, and demands that you surrender same accordingly.

Please take notice, as above stated, and kindly acknowledge receipt of this letter.

Yours very truly,

Commerce Street Company, Inc.,

By ————

·President."

Goodyear refused to surrender possession of the property, and this suit was begun.

Stated concisely, but fully, the controlling facts and questions in the case are these: Commerce purchased the realty in September 1946. American promptly notified Goodyear of the sale. Commerce gave Goodyear

sufficient notice of the cancellation of the lease by its letter of January 2, 1947; if it had the right to cancel under the terms thereof. Did it have such authority?

Commerce contends the contract should be construed to mean that:

(1) Goodyear had an absolute lease of the property from January 1, 1946, to December 31, 1946.

(2) If American sold the property, the lease could be cancelled by the purchaser at any time on or after January 1, 1947, upon ninety days notice.

(3) The time of the sale was not of the essence of the contract.

(4) The time of exercising the option to cancel the lease was of the essence of the contract; that is, the notice could not be given prior to January 1, 1947.

Goodyear contends the contract should be construed to mean that:

(1) Goodyear had an absolute lease of this property for one year beginning January 1, 1946, and ending December 31, 1946.

(2) If American entered into a bona fide contract of sale, or an actual sale, of the premises on or after January 1, 1947, the lease could be cancelled upon ninety days notice.

(3) The time of the sale, or contract of sale, was of the essence of the contract; that is, the sale, or contract of sale, had to be made on or after January 1, 1947; and that a sale prior to January 1, 1947, did not meet the requirements of the contract so as to authorize the exercise of the right to cancel the lease.

(4) The time of exercising the option to cancel the lease was of the essence of the contract. The notice could not be given prior to January 1, 1947.

The contentions of the parties, thus stated, are limited in difference to the main question: Did Commerce have the right to cancel the lease by its letter of January 2, 1947, when it bought the realty on September 16, 1946?

The chancellor stated:

"At the time the letter of October 29, 1945 was written the Goodyear Company's existing lease had a little more than two months to run, the expiration date being December 31, 1945. The letter clearly and definitely calls for a lease commencing January 1, 1946 and ending December 31, 1946, and this was accepted by the lessor. The letter then goes further and purposes that the lessee is to have the 'option to extend this lease and all terms and conditions thereof for three further periods of one year each upon written notice to you not later than sixty days prior to the expiration of the original or any extended term. . . .'

"It plainly appears that the 'original' referred to in the above quoted sentence meant the lease, beginning January 1, 1946 and ending December 31, 1946. It is further apparent that 'any extended term' referred to the three further periods of one year each, as being distinct periods from the original term beginning January 1, 1946 and ending December 31, 1946.

"The next succeeding paragraph in the letter under said date of October 29, 1945, provides that 'in the event you shall, during any extended period referred to in the preceding paragraph, enter into a bona fide agreement for the sale of the herein demised premises, you may terminate this lease by advising the undersigned in writing of your intention to so terminate at least ninety days prior thereto.'

"The court has reached the conclusion that this paragraph means exactly what it says, and that it is not am-

biguous. It follows, that extrinsic evidence will not be received to explain or vary the meaning which is, that before the lessor had the right to terminate the lease, the sale had to be made during one of the extended periods, and not during the period of the original lease, i. e. between January 1, 1946 to December 31, 1946.

"The law is well settled that, where a contract is plain and unambiguous, extrinsic evidence may not be received to vary or explain its terms. This rule is so elementary as to need no citation of authorities."

Goodyear takes the position that this contract is plain in its terms, simple in its meaning, unambiguous, and admits of no consideration of surrounding conditions, motives which induced its execution, and the purpose to be effected in order to ascertain its meaning. With that insistence we cannot agree.

The answer of American plainly shows that this party to the contract did not consider the time of sale of the essence of the contract. The answer states:

"Your respondent regarded the letter of October 29, 1945, as the current agreement but your respondent also in view of correspondence heretofore exhibited to this answer regarded the letter of October 29th, 1945, as having a definite meaning; that is, that the lease in event the property was sold could be terminated on 90 days notice but said lease could not be terminated until after December 31, 1946 and your respondent alleges that considering all of the correspondence relating to said lease agreement it was understood by both parties that the letter of October 29th, 1945 would constitute a firm agreement as to the rental of the property for the year 1946 and that the tenant would have the privilege of renting for three one year periods provided the property was not

sold and if the property was sold the lease could be terminated upon 90 days notice after December 31, 1946."

The contract of sale shows the same construction by Mr. James Frazer, Secretary-Treasurer of American. This contract of sale provides:

"I agree to take property subject to leases with Goodyear Tire & Rubber Company at $750.00 per month, and Currey Radio Service at $125,00 'per month; both leases being cancellable in 60 or 90 days, if sold."

To the contrary Goodyear insists that the time of the sale as a prerequisite to the right to cancel the lease was of the essence of the contract.

It is our opinion that all surrounding facts and circumstance should be considered in order to ascertain whether the parties intended for the time of sale to be of the essence of the contract.

It is the duty of the court in the construction of contracts to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and their mutual understanding of the meaning of their contract.

The motives which induced the contract have a definite bearing upon the intention of the parties. The object and purpose to be effected furnish valuable aids in ascertaining such intention. McNairy v. Thompson, 33 Tenn. 141, 142; Nashville & N. W. R. Co. v. Jones, 42 Tenn. 574; Taylor v. Neblett, 51 Tenn. 491; Mills v. Faris, 59 Tenn. 451; Nunnelly v. Warner Iron Co., 94 Tenn. 282, 29 S. W. 124; Perkins Oil Co. v. Eberhart, 107 Tenn. 409, 64 S. W. 760.

Prior negotiations may be considered to determine the real understanding of the parties concerning the

meaning of the terms and provisions of the contract. Dawkins v. Koch, 12 Tenn. App. 220.

█ In Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, 181 Tenn. 453, 181 S. W. (2d) 625, 631, this rule is approved for the construction of contracts:

"The court, placing itself in the position of the contracting parties, considers all the facts and circumstances so as to ascertain what the parties intended, the primary purpose being to ascertain just what was within the contemplation of the parties."

█ In Southern R. Co. v. Bacon, 128 Tenn. 169, 159 S. W. 602, our Supreme Court said:

"Contracts must be construed with reference to the situation and surroundings of the parties, the nature of the business in which they are engaged and to which the contract relates, and also with reference to the subject-matter."

In 12 A. M. Jur., 784, Contracts, Section 247, it is said:

"In the interpretation of an agreement, the surrounding circumstances at the time it was made should be considered for the purpose of ascertaining its meaning, but not for the purpose of adding a new and distinct undertaking. In interpreting an agreement, a court should, to the best of its ability, place itself in the situation occupied by the parties when the agreement was made and avail itself of the same light which the parties possessed when the agreement was made so as to judge of the meaning of the words and of the correct application of the language to the things described."

█ 12 Am. Jur., 792, Contracts, Section 250, states this rule:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of

which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.''

██ ██ Concerning the time element in contracts, 12 Am. Jur., Contracts, provides:

Section 308. ''In equity time is not ordinarily regarded as of the essence of the contract in the absence of an express stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case. If the contract is silent in respect of the condition of time or fails to indicate a distinctive purpose of the parties to make it an essential consideration and if there are no circumstances to manifest its importance, a court of equity does not regard time as of the essence.''

Section 311. ''The rule as to when the facts and circumstances, the nature of the subject matter of the contract, or the character of the interest bargained for make time of the essence cannot be stated in any general way. In the determination of the question whether time is of the essence, the general rules of interpretation are applied. Accordingly, the entire agreement is considered, together with the circumstances and purposes of the parties and the subject matter.''

See, also, Farris v. Ferguson, 146 Tenn. 498, 242 S. W. 873, 23 A. L. R. 624.

Applying these principles to the lease contract under consideration, we have this situation:

The old lease contract of 1933 expired on December 31, 1945. In October prior to its expiration, the parties began negotiations for a new contract. The four letters above set out were written in regard thereto. They show

American wanted to sell the property. Goodyear wanted to lease it for one year with the privilege of renewing the lease at its option for three additional years. American was willing to enter into the lease contract, provided a clause was inserted to the effect that the lease could be cancelled after the first year if the property were sold.

The final letter was prepared by Goodyear on October 29, 1945, which purported to embody the contract. It provided for:

(1) An absolute lease for one year, January 1, 1946, to December 31, 1946.

(2) The cancellation of the lease at any time after December 31, 1946, upon ninety days notice, if the owner "entered into a bona fide agreement for the sale" of the property.

(3) The sales clause is: "In the event you shall, during any extended period referred to in the preceding paragraph, enter into a bona fide agreement for the sale of the herein demised premises, you may terminate this lease by advising the undersigned in writing of your intention to so terminate at least ninety days prior thereto."

The record shows no discussion of the time when the sale must be made in order to make the cancellation clause in the contract effective. It is shown that realty sells to better advantage if possession can be given. This court can take judicial knowledge that the prices of realty in Nashville were very high in the year 1946. It is altogether unreasonable to think that Mr. James Frazer, who was handling the deal for American and who was shown to be an excellent business man, would enter into a lease contract which would prevent his even entering into a contract of sale of the realty in the year 1946, when he expressly wanted to sell it.

Goodyear was not attempting to contract against American's right to sell the property. The purpose to be attained by the contract from the point of view of Goodyear was an absolute lease on the realty for one year and a ninety days notice thereafter before the lease could be cancelled, if the realty were sold. We do not think the parties intended to deny the right of cancellation if the property were sold on December 31, 1946; but grant the right of cancellation if the property were sold on January 1, 1947. But such would be the effect of the contract if it should be construed according to the contention of Goodyear.

■ Having that view, we hold that the time of the sale, or agreement to sell, was not of the essence of the contract. Time of cancellation of the lease was of the essence of the contract. To exercise its option to cancel the lease after December 31, 1946, American had only to prove that it had entered into a bona fide agreement to sell the property or had sold the property. The time when the agreement to sell or sale was made was immaterial, just so it was before the notice to cancel.

■ Commerce had the right to cancel the lease, and the letter of January 2, 1947, was sufficient exercise of the right to effect the cancellation ninety days thereafter.

The decree of the chancery court is reversed. Complainant's bill is sustained as an unlawful detainer suit. Complainant was entitled to the possession of the realty in question ninety days after January 2, 1947. The costs of the lower court and of the appeal are adjudged against Goodyear. Judgment will be entered in this court in accordance with this opinion.

Remand to the chancery court to enforce the judgment, and for such further proceedings as may be proper.

Felts and Howell, JJ., concur.