# SKY CHEFS v. SHERMAN PRYOR.—276 S. W. (2d) 485.

Eastern Section. August 13, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

Ambrose & Wilson, of Knoxville, and Goddard & Gamble, of Maryville, for appellant.

Hugh E. De Lozier, of Maryville, for appellee.

McAMIS, P.J.   This suit grows out of the sale of restaurant equipment by complainant Sky Chefs to the defendant Sherman Pryor. Sky Chefs appeals from a decree based upon a finding that it breached the contract of sale by failing to make delivery on April 1, 1952, as the Chancellor thought the contract required.

The purpose of the bill, filed May 3, 1952, was to enjoin a replevin action at law instituted by the defendant herein, Sherman Pryor, to obtain possession of the property. Under the various pleadings later filed the question is whether Sky Chefs agreed to deliver the property on April 1, 1952, or whether, as complainant insists, defendant was to get the property only as it became available during the process of remodeling the building in which it operates and the installation by it of new restaurant equipment.

Complainant is a corporation engaged in the restaurant business.  For some time prior to 1951 it operated a restaurant at McGhee Tyson Airport in Blount County. The record indicates that it does a large business serving meals to plane passengers and to the public.  In 1951, the City of Knoxville began extensive improvements in the Terminal building including the space occupied by com-

plainant's restaurant. Defendant was advised early in 1951 by Mr. Reilly who was then manager of complainant's restaurant that the old equipment would be for sale and seems to have gained the impression from Mr. Reilly that it would be necessary to close the restaurant for as much as 60 days to install the new equipment. In the summer of 1951, Mr. Reilly was succeeded by William Van Slyke and Reilly thereupon was employed as manager of a hotel operated by defendant.

On November 20, 1951, Reilly, acting for defendant, wrote the New York office of complainant offering to purchase the old equipment for $500. The letter contains the following:

"We agree to move the above equipment, at our expense, *as designated* by Mr. Van Slyke." (Italics ours.)

This offer was declined but defendant seems to have kept up negotiations with Mr. Van Slyke who was staying at his hotel a part of the time. These negotiations resulted in a sale of the equipment at $1,047.45 and the execution in New York of a bill of sale dated March 14, 1952, containing the following:

"Know All Men by These Presents:

"That Sky Chefs, Inc., a Delaware Corporation having its principal offices at 122 East 42nd Street, in the City and State of New York, for and in consideration of the sum of One Thousand and Forty-Seven Dollars and Forty-Five Cents ($1,047.45) payable as follows, to wit: *a deposit* of One Hundred Dollars ($100.00), receipt of which is hereby acknowledged; the balance of Nine Hundred and Forty-Seven Dollars and Forty-Five Cents ($947.45) to be paid in cash *upon the receipt of the goods and chattels* (hereinafter listed), does hereby grant, sell and transfer unto Sherman Pryor the following goods and chattels * * *." (Italics ours)

We cannot agree with the learned Chancellor's holding that "as designated" was intended to mean "as pointed out" by Mr. Van Slyke. The context dealt not with the articles to be purchased but with the removal of the equipment which was to be at the expense of the purchaser and "as designated" by the seller. And the dictionary definition of "designated", adopted by the Chancellor, would in our opinion mean that the purchaser agreed to accept whatever articles the seller might select which seems to us out of harmony with the basis upon which business men ordinarily deal in matters of this kind.

But, leaving the letter out of consideration, we think it is clear from the italicized language of the bill of sale that possession was not to pass upon delivery of the bill of sale and that the writing did not contain the entire agreement. The cash payment was referred to as a "deposit" and the balance was not to be paid until receipt of the goods. If delivery was to concur with delivery of the bill of sale the natural inference is that receipt of the entire amount of the purchase price would have been acknowledged in the bill of sale.

Moreover, defendant admits in his answer that the so-called bill of sale does not contain the entire agreement. Though, at one point in the answer, it is asserted that the oral agreement as to delivery was made after the sale, at another point, the answer contains the following: "Said Bill of Sale described said restaurant equipment, which was the subject of the transaction, and this defendant accepted same with the oral understanding with complainant's said agent, the said William Van Slyke, that the property would be delivered to this defendant on or before April 1, 1952."

In his testimony defendant says he was to have 30 days to move the equipment though this was for his benefit and that he was to pay the purchase price above the $100 deposit "when I received the goods." He says he later accepted delivery of only part of the equipment because if he had removed all of it complainant would have been forced to close its restaurant.

For defendant it is insisted the language "grant, sell and transfer" contained in the bill of sale controls the time of delivery; that parol evidence offered by complainant to show a different date tends to vary and contradict the written memorial of the agreement and that complainant should be limited to a reformation of the contract, the only relief sought by the bill. Complainant, on the other hand, insists that the bill was hurriedly drawn to prevent irreparable damage to its business; that it should be entitled to rely on its prayer for general relief under any theory entitling it to relief under the facts as developed in proof and that, if not entitled to a reformation, the contract should be held to be silent as to the date of delivery and the intention of the parties determined from the testimony of witnesses and from the circumstances under which the parties dealt.

The question of the construction of the contract was necessarily to some extent involved in determining complainant's right to reformation and we think the record fairly shows that the meaning of the contract was considered by counsel during the taking of testimony and by the court in the opinion. In finding that the agreed date of delivery was April 1, 1952, the Chancellor seems to us to have treated the contract as being partly in parol for there is nothing in the written contract fixing that date. Or, it may be that defendant's testimony that April

1, 1952 was to be the date of delivery was considered on the ground that the contract is ambiguous as to the time of delivery. In either event parol evidence of the circumstances of the parties should be considered in arriving at their intention as to the time of delivery. If otherwise entitled to relief, we would not be disposed to cut off complainant's rights but to grant appropriate relief under the general prayer.

In the recent case of Commerce Street Co., Inc., v. Goodyear Tire & Rubber Co., 31 Tenn. App. 314, 215 S. W. (2d) 4, it was held that a lease contract being ambiguous with respect to the time when the lease could be cancelled in the event of a sale of the realty parol evidence should be considered to ascertain whether the parties intended for the time of the sale to be of the essence of the contract. The rule is well established by numerous other cases to the same effect. As applied to date of delivery of goods see 32 C. J. S., Evidence, Sec. 1013, page 1035, note 35.

And, of course, if the writing does not contain the entire agreement parol evidence must be considered to supply the missing terms. See Kilday v. Baskette, 36 Tenn. App. 479, 259 S. W. (2d) 162, where, as in this case, one of the parties to the contract admitted under oath that the writing failed to express the entire agreement.

The testimony for complainant that the equipment was to be delivered only as available and that after Van Slyke became manager it was never contemplated that the restaurant would be closed is positive and uneqivocal. We think it is entirely unreasonable to assume that complainant would sell its equipment for $1,047.45 if to do so would involve closing the restaurant and that the documentary evidence strongly supports complainant's theory and insistence.

The learned Chancellor reasoned that it is unreasonable to suppose defendant would have purchased the equipment "as is" without any agreement as to how long it could be used by complainant. The time involved it seems to us, however, could be closely estimated and, in fact, the record shows that except for this suit all of the equipment could have been delivered on July 17, 1952, as complainant offered to do. A number of items were available for delivery in April.

For the reasons indicated we are constrained to disagree with the learned Chancellor and it results that the decree must be reversed and a decree rendered for complainant. Costs of both courts will be taxed to defendant and the cause remanded for disposing of the order of reference now pending consistently with this opinion.

Hale and Howard, JJ., concur.