Jerry SAWYER, Appellee,

v.

Theodore C. MERCER, Board of Trustees of Bryan College, and Bryan College, Appellant.

Supreme Court of Tennessee.

Feb. 25, 1980.

C. P. Swafford, Dayton, for appellant.

Don W. Poole, Chattanooga, for appellee.

## OPINION

COOPER, Justice.

Appellee Jerry Sawyer, an assistant professor of English, instituted this action against Bryan College, its Trustees, and President, seeking specific performance of a contract of employment or, in the alternative, damages for its breach. The chancellor held that appellee had not acquired tenure under his contract with Bryan College and dismissed the action. The Court of Appeals reversed the decree of the chancellor, awarded appellee tenure, and remanded the action to chancery court. We granted Bryan College's application for permission to appeal in order to review the action of the Court of Appeals.

The record shows that appellee completed the course of study required by Washington State University for a Ph.D. degree in English in 1972. In May of that year Dr. Theodore C. Mercer contacted appellee at his home in Moscow, Idaho, to learn if he was interested in a teaching position open at Bryan-College. Appellee professed his interest and, after being interviewed by several officers of the college, was offered an employment contract for the 1972–73 school year. The contract which forms the basis of the present action provided, with respect to tenure, that:

2. Achievement of tenure will be according to the academic policy of the college which is basically standard AAUP procedure. The length of time required to achieve tenure is 4–7 years depending on the prior teaching experience of the individual. In your case because, of your experience as a teaching assistant at the college level, *your probationary period will be four years.* (emphasis supplied)

3. This contract is governed by the published standards of the college appearing in the catalog and the *Faculty-Staff Guide.* The current edition of the *Guide* is not up to date, but we are holding off on the revision until after the self-study is completed. Though the present edition is not completely up to date, it is substantively reliable for the purpose for which it is mentioned here—that is, that all college contracts are subject to the standards and policies of the college and that only major items are included in this letter accompanying initial contract.

The *Faculty-Staff Guide* referred to in the initial contract of employment, has the following to say on the issue of tenure:

Unless otherwise stated in writing, all full-time appointments will be probationary until notification of change of status is sent to the appointee by this college on the terms and conditions set forth below: *Full-time teachers required to serve a probationary period will, at the expiration of such probationary period have permanent tenure . . . ..* (emphasis supplied)

\* \* \* \* \* \*

Except as noted in Section G, written notice will be given at least within ten days after the beginning of the second semester of the current academic year if the teacher is not to be continued in service after the expiration of that period; . . . ..

Section G provides that:

In all cases wherein the facts are in dispute, termination for cause of permanent appointment, or the release of a teacher during the probationary period with less notice than that specified in Section B, shall be considered at a hearing by a standing committee of the faculty as established by the by laws of the college. The teacher concerned will before the hearing, be informed in writing of the charge against him, and will have opportunity to be heard by the committee in

his own defense after a written request made preferably within thirty days. In the hearing of charges of incompentence, the testimony will include that of teachers and other scholars from this and other institutions. The committee's report and recommendations will be submitted to the board of trustees of the college.

After the initial contract of employment, appellee received contracts and taught for the 1973–74, 1974–75, and 1975–76 school years. No notice was given appellee within the contractual "10 days after the second semester began" that he would not be retained for the fifth year. However, in March of 1976, appellee and four other faculty members under consideration for tenure were informed by Dr. Mercer that the Faculty Development council and the Trustee Committee were involved in a tenure evaluation. The faculty members were asked to wait until the conclusion of the May meeting of the Council to receive notification as to the granting of tenure. Every faculty member, except appellee, waived the time requirement.

Dr. Mercer then submitted a contract to the appellant for the 1976–77 school year. The contract was identical to the other contracts except for the following:

This special note to recognize that you are among the group up for tenure consideration at this time. The general information regarding the tenure situation appears in the general cover memo for contracts, and you have the benefit of the information shared in the special meeting of March 3 with the five of you who are involved. This matter will be resolved as soon as possible after we get clear instructions from the trustees. It is acknowledged that you are not in agreement with the procedure being followed temporarily in this matter.

In accepting the contract, appellant made specific reference to the fact that he was not waiving any of the terms of the initial contract.

On May 6, 1976, the appellee was informed by letter from Dr. Mercer that he was "not among the faculty approved by the board of trustees for tenure . . . ." Dr. Mercer also had the following to say:

. . . There is no question about the appropriateness or the validity of your contract for next year as a one-year regular faculty contract. I am aware of your attitude that since you were not notified within the time limit specified in the policy, you believe you are automatically entitled to a tenure contract regardless of the fact that tenure at Bryan has never been given by default on an automatic basis and apart from an evaluation. For tenure to be achieved on such a basis vitiates the substantive meaning of the probationary period just as termination of a tenure appointment without cause would destroy the whole idea of tenure.

What this amounts to is that the contract you now have should be regarded as your final contract at Bryan. I am aware that you may want to appeal your case on the basis of the administrative failure to notify within ten days of the beginning of the second semester, but I believe that the offer of this additional year's contract removes that defect by giving you an additional year's appointment with a full year's notice (15 months actually) instead of the approximately one semester's notice. . . .

The only alternative I see to this situation would be if you should request on your own initiative that your probationary period of four years, which was granted through administrative faux pas, be conformed to the policy prevailing at the time you were appointed. This adjustment would bring your probationary appointment in line with two other faculty members appointed in the same general period in which you came to the college, whose prior teaching experience, like yours, was at the graduate assistant level rather than full-time regular teaching. I cannot possibly tell you why you were given a four-year probationary appointment for which you did not qualify under the policy and procedures we have been following. All I can say is that it happened and it was a mistake.

Appellee insists that he acquired tenure when appellant did not give timely notice that tenure would not be granted and appellee was permitted to complete his full four-year probationary period. Appellant contends that under the contract, tenure is not automatic, that it takes affirmative action by the college board of trustees to grant tenure and that such action was not forthcoming.

Bryan College is a private institution; consequently, the statutes relating to tenure are not binding in any way on either Bryan College or the appellee. The relationship between Bryan College and appellee is to be determined and is controlled by the contract of employment given by the college to appellee. And, as in all contract cases, "it is the duty of the court in the construction of [the contract of employment] to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and their mutual understanding of the meaning of their contract." *Commerce Street Co. v. Goodyear Tire and Rubber Co.*, 31 Tenn.App. 314, 215 S.W.2d 4 (1948). In determining the intention of the parties to a contract, language used must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, Tenn., 521 S.W.2d 578 (1975).

We see no basic ambiguity in the contract with respect to tenure. Giving the language used its ordinary and popular meaning, appellee was to get tenure on the expiration of a four year probationary period, without more. Once the appellee was given a contract to teach for the all-significant fourth year, appellant came under a contractual duty to take affirmative action by giving notice to appellee "within ten days after the beginning of the second semester of the academic year" if appellee was not to continue as a teacher at Bryan College. The contractual notice was not given, nor did appellant take any other action to indicate dissatisfaction with appellee's work as a teacher, but permitted appellee to finish the full four year probationary period. We agree with the Court of Appeals that under the literal wording of the contract of employment, appellee acquired tenure at the expiration of his four year probationary period.

It may be true, as insisted by appellant, that appellee was given a four year probationary period as the result of an administrative faux pas. We note, however, that the question of length of appellee's probationary period was not raised until after the expiration of the time for giving of notice to appellee. In any event, the mistake, if one were made, was only on the part of appellant and would not vitiate the contract. Neither would it give appellant the right in the latter part of the fourth year of probation—after the expiration of the contractual time of notice, denying appellee tenure—to modify the terms of the contract of employment and extend the period of appellee's probation, nor give appellant a basis for the denial of tenure.

The judgment of the Court of Appeals is affirmed. The cause is remanded to the Chancery Court of Rhea County for entry of a decree that Jerry Sawyer has academic tenure at Bryan College and such other action as necessarily results from entry of such a decree. Costs of the cause are adjudged against appellants, and their surety.

BROCK, C. J., and FONES, HENRY and HARBISON, JJ., concur.