# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **PAT SIMPSON,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Obion Chancery No. 17,041 |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GOLDEN SERVICE REALTY &** | ) | Appeal No. 02A01-9509-CH-00203 |
| **AUCTION, INC.,** | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **PHH HOMEQUITY CORPORATION,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

**Dec. 23, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF OBION COUNTY
AT UNION CITY, TENNESSEE

THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

For the Plaintiff/Appellee:          For the Defendant/Appellant:

William R. Neese                     Catherine B. Clayton
Dresden, Tennessee                   Jonathan O. Steen
                                     Jackson, Tennessee

**AFFIRMED IN PART, REVERSED IN PART**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

HEWITT P. TOMLIN, JR., SR. J.

**OPINION**

This case involves the alleged breach of a contract for the sale of real estate.  The trial court found that the seller breached the contract by selling the real estate to a third party.  Damages were assessed based on an expert's appraisal rather than the sale price to the third party.  We affirm the finding of a breach and reverse on the measure of damages.

In 1992, Appellee Pat Simpson ("Simpson") entered into a contract with Appellant PHH Homequity Corporation ("PHH") to purchase real property in Union City.  Sarah McEwen ("McEwen"), real estate agent for Golden Service Realty & Auction, Inc. ("Golden Service"), originally listed the property on December 10, 1991, at $75,500.  No offers were made to purchase the property, and the price gradually dropped.  By July 10, 1992, the listed price for the property had dropped to $54,500.  Simpson was monitoring the price of the property, and after the price dropped in July, Simpson made an offer of $53,000.  PHH accepted Simpson's offer, and Simpson paid $500 in earnest money.

The contract provided that the sale would be closed "within 45 days or sooner."  It stated that closing was to occur "on or before August 30, 1992."  In a paragraph detailing special conditions, the contract provided that it would be null and void and earnest money would be refunded if Simpson were unable to obtain financing.  Simpson signed the contract on July 14, and PHH signed on July 23.

On July 15, McEwen asked Simpson to sign a PHH Homequity Corporation Standard Addendum. This addendum included the following provision:

> In the event this transaction does not close by the scheduled closing date, through no fault of Seller, Buyer(s) agree to pay $__N/__ per day towards Seller's carrying costs. The total of said sum shall be credited to Seller on the actual closing date.  If the closing is delayed beyond 30 days from the original scheduled closing date, then at Seller's option, this agreement may be considered null and void.

The addendum also specified that it would "supersede and override any other conflicting clauses or statements in the attached contract."  Once again, PHH signed the addendum on July 23.

After signing the contract, Simpson applied for a loan with Save Trust Federal ("Bank").  While the loan application was pending, McEwen contacted both Simpson and the loan officer at

the Bank, communicating her concern that the loan be approved in time to meet the contract's August 30 closing date. On August 20, McEwen wrote a letter to Simpson, stating:

> This is to remind you that your contract . . . expires on August 30, 1992. If it has not closed by that date, there will be nothing more that we can do for you, it will be out of our hands.
>
> We want you to have the house. We have worked hard and are doing everything possible to get it closed by August 30th, 1992.
>
> In order to prevent any misunderstanding, we want you to realize your contract will be null and void.

The loan was not approved by August 30. McEwen called Simpson on September 1 to tell her that the house had been sold to another buyer. Simpson, however, took no steps to stop the processing of her loan, and it was approved on September 24.

Simpson subsequently sued for damages. After a bench trial, the trial court ruled that the contract was ambiguous on its face, that it did not expressly state that time was of the essence, and that a reasonable person would understand from the addendum that the buyer had thirty additional days past the official closing date in which to close the deal before the contract would become null and void. Consequently, the trial court found that PHH breached the contract by selling the property to a third party on September 1.[1]

In assessing damages, the trial court noted that the appropriate award would be the difference between the contract price and the fair market value of the house. The September 1 sale price to the third party was $53,900. However, the appraisal obtained by the Bank in connection with Simpson's loan valued the house at $61,000. The trial court awarded Simpson $8,000 in damages, the difference between the contract price of $53,000 and the appraised value of $61,000. PHH's motion to alter or amend the judgment was denied. PHH then filed this appeal.

On appeal, PHH raises two issues. First, PHH contends that time was of the essence in the contract and that the parties understood that the sale was to close on or before August 30. Second, if a breach is found, PHH contends that damages should have been based on the difference between the contract price and the price for which the house actually sold, rather than the difference between the contract price and the appraised value.

---

[1]Simpson had also sued Golden Service for allegedly inducing PHH to breach the contract. The trial court dismissed this claim at the end of Simpson's proof. This dismissal was not appealed.

The issue of whether PHH breached the contract requires interpretation of the parties' agreement. Contract interpretation is a question of law. *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992). Our scope of review, therefore, is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. *Id.*

The principles for contract interpretation are set forth in *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn. App. 1992):

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning, and neither party is to be favored in the construction.
>
> The court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract.

*Id.* at 118-19 (citations omitted).

In this case, the parties' agreement states that the sale is to be closed within forty-five days or sooner. Simpson signed the contract on July 14 and the addendum on July 15. PHH signed both on July 23. Forty-five days from July 14 fell on August 28, forty-five days from July 15 fell on August 29, and forty-five days from July 23 fell on September 6. The contract also states that the closing date is August 30 or before. As the trial court found, there is patent ambiguity on the face of the contract.

The contract is stamped with the following statement:

"SEE MODIFICATION ON ATTACHED ADDENDUM FORMING PART OF THE CONTRACT. CONTRACT VOID UNLESS ATTACHED ADDENDUM IS FULLY EXECUTED."

As noted above, the addendum provides that an additional thirty days are allowed for closing if the scheduled closing date is not met. The paragraph states that the contract will become null and void after this additional thirty days has lapsed. PHH maintains that the placement of "N/" in the blank in that paragraph indicates that the paragraph does not apply, while Simpson contends that the "N/" means only that she was to pay no money towards PHH's carrying costs.

3

The addendum contains the following statement:

THIS ADDENDUM SHALL SUPERSEDE AND OVERRIDE ANY OTHER CONFLICTING CLAUSES OR STATEMENTS IN THE ATTACHED CONTRACT.

Thus, if the provision in the addendum for an additional thirty days is applicable, this would override a closing date specified in the body of the contract.

Viewing the contract as a whole, including the addendum, the most reasonable interpretation of the language in the addendum is that the purchaser was given thirty days beyond the scheduled closing date in which to complete the sale. The contract would become null and void only after this additional thirty days had lapsed. This provision would override a closing date specified in the body of the contract. Therefore, the language in the contract and the addendum, taken together, indicate that Simpson had thirty days after the August 30 closing date in which to complete the transaction.

PHH argues that time was of the essence in the contract and that McEwen stressed the importance of the August 30 closing date in her August 20 letter to Simpson and in their conversations. The general rule is that time is not of the essence in real estate contracts. *Thompson v. Menefee*, 6 Tenn. App. 118, 128 (1927). Time can be of the essence, however, if the contract expressly stipulates so, if the contract or subject matter involved manifests such an intention, or if the intention is implied by the nature of the contract or the circumstances of the case. *Commerce St. Co. v. Goodyear Tire & Rubber Co.*, 31 Tenn. App. 314, 330, 215 S.W.2d 4, 11 (1948). In the instant case, the contract does not expressly state that time is of the essence. Neither the contract nor the subject matter manifest such an intent. Finally, an intent to make time of the essence is not implied by the nature of the contract or the circumstances. McEwen's actions after execution of the contract demonstrate that she considered time to be of the essence. However, the parties' actions at the time the contract was executed do not demonstrate such an intent. Moreover, Simpson testified that she read the addendum when she signed it and believed that it gave her extra time. Indeed, after McEwen told Simpson on September 1 that the house had been sold, Simpson asked McEwen about the addendum. The circumstances of the case do not support the contention that the parties had a meeting of the minds that time was of the essence.

PHH contends that Simpson's acceptance of the return of her earnest money evidenced her understanding that August 30 was the final deadline. The record indicates that the subject of earnest money was not broached by PHH until its motion to alter or amend the judgment. In its motion,

4

PHH asked the trial court to allow evidence of Simpson's acceptance of the earnest money, citing mistake or inadvertence of counsel. The trial court denied the motion to amend, and we find no abuse of discretion in that decision. *See Campbell v. Archer*, 555 S.W.2d 110, 112-13 (Tenn. 1977); *Serv-U-Mart, Inc. v. Sullivan County*, 527 S.W.2d 121, 123-24 (Tenn. 1975); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. App. 1995); *Braswell v. Carothers*, 863 S.W.2d 722, 730 (Tenn. App. 1993). Consequently, we do not consider the issue of Simpson's acceptance of the return of her earnest money.

Therefore, since there was no agreement that time was of the essence in the contract and since the language in the contract and the addendum gave Simpson thirty days beyond the August 30 closing date in which to complete the sale, PHH breached the contract by selling the property to a third party on September 1. The trial court is affirmed on this issue.

Next, we consider the issue of damages. Our review of this issue is *de novo* upon the record with a presumption of correctness of the findings of fact unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armstrong v. Hickman County Highway Dep't*, 743 S.W.2d 189, 195 (Tenn. App. 1987).

The measure of damages for breach of contract for the sale of real estate is the difference between the contract price of the property and its fair market value at the time of the breach. *Turner v. Benson*, 672 S.W.2d 752, 754 (Tenn. 1984). The fair market value of realty is the price a reasonable buyer would pay if he were willing to buy but did not have to and that a willing seller would accept if he were willing to sell but did not have to. *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976). In this case, the trial court found that the fair market value of the property was $61,000, the amount at which it was appraised for Simpson's loan from the Bank. Under some circumstances, an appraisal may provide a more accurate measure of the fair market value than the actual selling price, as, for example, where the seller is under a compulsion to sell quickly. However, in this case, the house had been on the market for seven months before Simpson made her offer of $53,000, starting at an asking price of $75,500 and gradually dropping to an asking price of $54,500. There is no evidence in the record that anyone offered the appraised price of $61,000 during the seven months the property was being offered for sale. In addition, the evidence does not establish that PHH was under a compulsion to sell. Given the length of time the house had been on the market, we find that the eventual selling price of $53,900 represented the fair market

5

value of the property. We therefore reverse the trial court's award of $8,000 in damages and instead order an award of $900 in damages to Simpson, the difference between Simpson's contract price and the actual selling price.

The trial court's finding that PHH breached its contract with Simpson is affirmed. The damage award of $8,000 is reversed and damages ordered in the amount of $900. Costs on appeal are assessed against both Appellant and Appellee equally, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**HEWITT P. TOMLIN, JR., SR. J.**