IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 27, 2006

**ALLSTAR CONSULTING GROUP,**
**A/K/A ALLSTAR CONSULTING GROUP, LLC**
**v.**
**TRINITY CHURCH & CHRISTIAN CENTER AND TRUSTMARK**
**NATIONAL BANK**


**An Appeal from the Circuit Court for Shelby County**
**No. CT-003162-04     Robert L. Childers, Judge**


**No. W2006-00272-COA-R3-CV - Filed January 18, 2007**


This is a breach of contract case. The plaintiff finance broker and the defendant church entered into an agreement under which the plaintiff broker was to assist the church in obtaining a loan, and the church would pay the plaintiff a 3% broker's fee for this service. The plaintiff broker negotiated a financing arrangement as requested by the church. Independent of the plaintiff, the church obtained financing from a different lender. The plaintiff then claimed a right to its broker's fee under the parties' agreement, claiming that it had an exclusive arrangement with the church. The church refused to pay the fee, denying that it had an exclusive arrangement with the plaintiff broker. The plaintiff filed the instant lawsuit against the church to recover its broker's fee. The trial court held in favor of the plaintiff, concluding that the parties' agreement was exclusive. The church now appeals. We affirm, finding that the issue turns on the credibility of the witnesses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Ted I. Jones, Memphis, Tennessee, for the appellant, Trinity Church & Christian Center.

Lenal Anderson, Jr., Memphis, Tennessee, for the appellee, Allstar Consulting Group, a/k/a Allstar Consulting Group, LLC.

**OPINION**

Defendant/Appellant Trinity Church & Christian Center ("the Church") contacted financial broker Connie Mathews ("Mathews"), the manager of Plaintiff/Appellee Allstar Consulting Group, a/k/a Allstar Consulting Group, LLC ("Allstar"), to assist the Church in obtaining a loan for capital improvements. Subsequently, on July 4, 2003, the parties executed a broker's fee agreement ("the Agreement") under which Mathews would arrange for approximately $700,000 in financing for the Church in exchange for a 3% broker's fee. Pursuant to the Agreement, Mathews attempted to arrange financing for the Church. Meanwhile, in September 2003, independent of Mathews, Bishop Melvin Nalley ("Reverend Nalley"), the agent for the Church, obtained the desired financing through Trustmark National Bank.[1] After that, Allstar claimed that it was the exclusive broker for the Church during that time, and that it was entitled to a broker's fee under the parties' Agreement. The Church refused to pay Allstar a broker's fee.

On November 13, 2003, Allstar filed a lawsuit in Shelby County General Sessions Court against the Church for breach of contract. A trial was held on May 12, 2004, and a judgment was entered in favor of the Church.

On May 24, 2004, Allstar filed an appeal to the Circuit Court for a *de novo* hearing. On October 27, 2005, a bench trial was conducted by the Circuit Court. While the appellate record does not include a transcript of the trial, a Statement of the Evidence is included in accordance with Rule 24(c) of the Tennessee Rules of Appellate Procedure.

Mathews testified at the outset of the trial. Mathews stated that she was retained by the Church to seek financing so that the Church could make improvements to its property and "free up" some cash. The Agreement between the parties was introduced into evidence and marked as Exhibit 1. Exhibit 1 stated on its face that it was the "original" copy. The Agreement was a form document which left certain contractual terms blank for the parties to complete. In one provision, the parties were given the option of hiring the broker on an exclusive or nonexclusive basis, and boxes were placed next to each option for the parties to mark their choice. The copy of the Agreement marked Exhibit 1 had an "x" in the box beside "exclusive," indicating that Allstar had the "exclusive" right to arrange a loan for the Church for a period of ninety (90) days under the contract. Mathews testified that, under that Agreement, Allstar had an exclusive agreement for the brokerage on the financing. Exhibit 1 was signed by Reverend Nalley.

---

[1]Trustmark National Bank, although named as a defendant, was dismissed from the case and is not a party to this appeal.

Another copy of the parties' Agreement, marked as Exhibit 2, was presented to Mathews.[2] Exhibit 2 noted on its face that it was the "File Copy" of the Agreement.[3] Exhibit 2 was obviously the same contract as Exhibit 1 on most other handwritten terms, but on Exhibit 2 the boxes next to the "exclusive" and "nonexclusive" options had been left blank. Mathews said that Exhibit 2 was in fact a copy of the Agreement that she had left with Reverend Nalley. She contended, however, that the "exclusive" box on the Agreement was filled out in Reverend Nalley's presence and with his assent. She explained that the Agreement was a pull-apart form and that Exhibit 2 was an additional copy of what she originally left with the Church.

Mathews testified that she obtained financing suitable for the Church's needs with the Merchants & Farmers Bank, and that Reverend Nalley signed and approved the letter and contract proposal on August 23, 2003. She noted that the Church wanted additional funds and some other changes, and that she worked to obtain those. Mathews produced evidence showing she obtained financing in a higher amount and with slightly different terms than in the first arrangement. This second proposed contract, however, was never signed by Reverend Nalley. Mathews stated that she had addressed the Church's requests, and felt that she had done her job with respect to the financing. She claimed that she had a contractual right to the commission due.

Reverend Nalley testified that he did not believe that Mathews had an "exclusive" contract. He said that he was open at all times to other offers, and that he had been directed by the Board of Trustees of the Church to seek more favorable financing terms. Reverend Nalley denied that the "exclusive" box on the Agreement was checked in his presence, and asserted that the box was checked without his assent. He admitted that he signed the proposed financing arrangement outlined in the Merchants & Farmers Bank letter and that he had considered that arrangement for the Church. Reverend Nalley testified that, at that time, he and Mathews were not getting along on their work for the financing, and that he felt that she was pushy and made too-frequent personal appearances at the Church. For her part, Mathews denied any such intrusion and said that she was only trying to get the Church to do what it had promised to do.

The trial court heard testimony form John Crockett, an agent for Trustmark National Bank. Crockett testified that this bank eventually loaned the Church "up to $700,000."

On November 4, 2005, the trial court entered an order in favor of Plaintiff/Appellee Allstar. The trial court held specifically that the Church had breached the Agreement and owed Allstar damages of $16,950 plus costs. On December 2, 2005, the Church filed a motion to alter or amend the judgment, for new or additional findings of fact, or for a new trial. The Church argued, among other things, that the Church's Agreement with Allstar was not exclusive. On January 3, 2006, the trial court entered an order denying the Church's motion. From that order, the Church now appeals.

---

[2]Another copy of the contract was also presented and marked as Exhibit 3. This copy was exactly like Exhibit 2, and it merely illustrates the point that this contract was a three-part pull-apart form.

[3]The signature page of this exhibit reflects that it is the "customer copy," rather than the "file copy." In any event, neither page is part of the "original copy" presented by Allstar.

On appeal, the Church argues that the trial court erred in its implicit finding that the Agreement between the parties was "exclusive." The Church notes that the parties' signatures are on both copies of the contract – Exhibit 1, indicating exclusivity, and Exhibit 2, indicating that the choice had not been made. The Church claims that this is a novel issue, because it involves an interpretation of a pull-apart contract in which the "parts" are different from one another, creating an ambiguity as to the parties' intent on this issue. The Church argues that any ambiguity should be construed against the party responsible for drafting the contract, namely, Allstar. In response, Allstar maintains that the trial court's decision turns on its credibility determination in favor of Mathews and her explanation about the discrepancies between Exhibit 1 and Exhibit 2 and about the parties' intent. It argues that such credibility determinations are within the province of the trial court and should not be reversed on appeal.

This case was tried before the trial court without a jury. Therefore, we review the trial court's findings of fact *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review questions of law *de novo*, with no presumption of correctness. *Id.* The interpretation of a contract is a question of law, which requires a *de novo* review. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Where a contract is ambiguous and its meaning must be determined from extrinsic evidence which is conflicting, the court is presented with a mixed question of law and fact. *Garner v. Phil Breeden & Assocs.*, No. M2002-03103-COA-R3-CV, 2004 WL 1888942, at *3 (Tenn. Ct. App. Aug. 24, 2004). Thus, while the underlying facts are reviewed under a *de novo* standard with a presumption of correctness, the legal conclusion arising from those facts is reviewed *de novo*, without such a presumption. *See Newcomb v. Kohler Co.*, No. W2005-02161-COA-R3-CV, 2006 WL 2535396, at *28 (Tenn. Ct. App. Sept. 5, 2006).

In a recent decision, the Tennessee Supreme Court discussed some of the basic rules of contract interpretation applicable in this case, emphasizing the importance of discerning and giving effect to the intent of the parties:

> . . . A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. This Court's initial task . . . is to determine whether the language is ambiguous. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language.
>
> Contractual language is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.
>
> ***
>
> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. An ambiguous provision in a contract generally will be construed against the party drafting it.

-4-

Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.

***Allstate Ins. Co. v. Watson***, 195 S.W.3d 609, 611-12 (Tenn. 2006) (citations and quotations omitted).

In this case, it is undisputed that there was an agreement between the parties. The issue is whether the parties intended for the Agreement to be exclusive. In accordance with the rules of construction, we look first to the language in the written contract to determine whether the language is clear or ambiguous on this issue. The original Agreement, submitted by Allstar as Exhibit 1, shows clearly that the broker is given an exclusive right to arrange a loan with a lender. However, Exhibit 2, a copy of the same fully executed contract, indicates that the parties had not made a decision on this point at the time the contract was signed.[4] Thus, it appears that, at the time the contract was signed by the parties, the exclusivity term was not clearly marked on the contract, and the contract was later modified to provide specifically for exclusivity as well as a change in the loan amount sought by the Church. Under these circumstances, the parties' intent on the issue of exclusivity must be deemed ambiguous.

Because this provisions of the contract is ambiguous, the intent of the parties must be discerned from parol evidence. Under the parol evidence rule, a court may "permit testimony to explain ambiguous terms or show a subsequent modification to a written agreement. Once admitted, this evidence does not in any way deny what the original agreement expressed; however, it merely demonstrates the parties may have exercised their right to modify the written agreement." ***Golden Constr., Inc./CFW Constr. Co. v. E. Luke Greene Caulking Contractors***, No. 54, 1987 WL 18061, at *1 (Tenn. Ct. App. Oct. 9, 1987); ***see also Commerce St. Co. v. Goodyear Tire & Rubber Co.***, 215 S.W.2d 4, 10 (Tenn. Ct. App. 1948) (determining that ambiguous contracts must be interpreted in light of all the surrounding circumstances in order to discern the intent of the parties).

In the trial court below, Mathews testified that she had an exclusive arrangement with the Church, and that Reverend Nalley signed the agreement that she presented. She stated that the carbon copy (Exhibit 2) was the Agreement as it read when she left it with Reverend Nalley for his review, and that the "exclusive" box was later marked in Reverend Nalley's presence and with his assent. Reverend Nalley, however, testified that Allstar did not have an "exclusive" contract. He denied that the "exclusive" box was checked in his presence or with his assent.

The trial court apparently credited the testimony of Mathews and discredited the testimony of Reverend Nalley on this issue. "When a trial court has seen and heard witnesses, especially where

---

[4] The only other difference in the two contracts is the amount of the loan, which was a handwritten term on the contract. On the carbon copy, "$680,000" is the amount of the loan that is handwritten in the blank for this purpose. On the original Agreement, this amount, in the same handwriting, is crossed out and "$700,000" is substituted thereon. Also, the original copy includes the amount written out as "Seven Hundred Thousand & xx/100."

issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." ***Seals v. England/Corsair Upholstery Mfg. Co.***, 984 S.W.2d 912, 915 (Tenn. 1999) (quoting ***Collins v. Howmet Corp.***, 970 S.W.2d 941, 943 (Tenn. 1998)). Thus, we afford great deference to the trial court's credibility determination in favor of Mathews and Allstar.

The Church argues that the ambiguous term of the parties' contract should be construed against Allstar based on the general rule of construction that an ambiguous term in a contract should be construed against the maker of the contract. In this case, however, the ambiguity was not created by the contract language. Rather, the ambiguity arose from the fact that the original Agreement, Exhibit 1, indicated exclusivity and the copy of the Agreement, Exhibit 2, did not. Resolution of this ambiguity did not turn on interpretation of the language; rather, it could be resolved only by determining whether the "exclusive" box on the contract was marked with the knowledge and assent of both parties. Thus, the credibility determination by the trial court was pivotal. Therefore, from a review of the evidence submitted at trial, and giving due deference to the trial court's credibility determinations, we conclude that the trial court did not err in finding that the parties intended for Allstar to have an exclusive relationship with the Church during the pertinent time period, and in awarding damages to Allstar on that basis.

The decision of the trial court is affirmed. Costs on appeal are taxed to Appellant Trinity Church & Christian Center and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE