TOM SHERMAN *v.* J. C. CATE, *et al.*█

(*Nashville.* December Term, 1928.)

Opinion filed April 15, 1929.

ANDERSON & WORD and JAMES CLARK, for complainant, appellees.

BURN & MICHAEL, for defendant, appellants.

PAUL R. STEWART and E. B. MADISON, for cross-complainant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought by Sherman to recover for materials furnished to Young & Stoner Construction Company, and used in erecting a public school building at Riceville, under contract with the McMinn County Board of Education. A lien was claimed against the building, and the United States Fidelity & Guaranty Company was made a defendant, and relief prayed against it as surety on bond given by it to indemnify the Board of Education; and, in the event the bond given was not held to be a statutory bond inuring to the benefit of complainant, then for a decree against the individual members of the Board on account of their failure to take such a bond, as required by the Act of 1899, Chapter 182.

The members of the Board of Education denied liability to Sherman, setting up their procurement of a statutory bond, but by cross-bill sought a decree against the Guaranty Company, in the event they should be held liable.

The Chancellor construed the bond to be a common law and not a statutory bond, but decreed liability thereon in favor of Sherman. From his decree the Guaranty Company appealed, insisting (1) that the bond was a statutory bond, and (2) that Sherman could not recover because of his failure to file an itemized claim within thirty days, as required by the Act. Sherman and the Board members filed the record for writ of error, he seeking judgment against the Board members, and they judgment against the Guaranty Company.

The Court of Appeals agreed with the Chancellor as to the character of the bond, but (1) denied Sherman recovery thereon for want of privity, and (2) held the members of the Board individually liable to Sherman because of their failure to comply with the statute in procuring a statutory bond for his protection, and (3) gave these members of the Board judgment over against the Guaranty Company, on the theory that the Guaranty Company was, as to them, estopped to deny the statutory character of the bond. The Guaranty Company alone is in this Court by petition which has been granted, complaining of the decree against it in favor of the members of the Board, leaving in force the decree against the members of said Board in favor of Sherman.

This Court has reached the conclusion that the bond in question should be construed to be a statutory bond, being led to this conclusion by several considerations.

This was quite obviously the intention of the parties to the bond contract. It was so insisted by both the obligor, surety Company, and the obligees. The construction of the parties is always persuasive. In *Canton Cotton Mills* v. *Overall Co.,* 149 Tenn., at page 29, this Court said: "The rule of 'practical construction' is one now widely recognized, and is thus well stated: 'The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the Court, and to this end not only the acts, but the declarations of the parties may be considered.' 8 Williston on Contracts, par. 623, citing many authorities, including *State* v. *Board of Trust,* 129 Tenn., 279, 329, 164 S. W., 1151 See, also, *Chicago* v. *Sheldon,* 9 Wall., 50, 19 L. Ed., 594; and *Yowell* v. *Life Ins. Co.,* 141 Tenn., 70, 90, 206 S. W., 334."

Indeed, if it were necessary, reformation of the contract might properly be decreed in a case like this, where both parties agree as to the intention in its making. This is unlike the case of *Tenn. Supply Co.* v. *Young & Son,* 142 Tenn., 142, wherein reformation was denied because it did not appear that either party had any intention to enter into a bond under the statute. Giving application to this rule of "practical construction," it would seem hardly necessary to go further, but other cumulative considerations appear.

The printed form of bond used is styled in its caption, "Statutory Bond, individual, firms, or corporation." This is significant. It thus appears that the parties to this bond have not only construed it as being a statutory bond, but have plainly so labeled it.

The Act of 1899 does not prescribe a form of bond. It is quite general in its recitals in this regard. It provides

only that no contract shall be let for any public work until the contractor shall execute a bond "to the effect that he will pay for all the materials and labor used in said contract." Note the use of the broad term, "to the effect." The Act does not require that the bond shall in terms run in favor of the materialman and laborer, only that the surety shall be in effect obligated to "pay for all the materials and labor."

This bond is not limited, as was that before the Court in *Hardison* v. *Yeaman*, 115 Tenn., 639, to furnish the materials and labor and complete the building according to the contract, the usual building contractors bond. In that case the Court found, not only that, neither the bond, nor the contract to which it related, called for *payment* for the materials and labor, but that it was entered into in ignorance, and therefore not in contemplation of the Act of 1899, and, furthermore, that it expressly provided "that it shall not be liable under this bond to anyone except the owner."

Here it may be presumed that the members of the Board had knowledge of the law, and in the performance of their duty were seeking to conform to, not disregard it. This bond contains no such express provision as is above quoted. On the contrary, it contains various references to claims that may arise for materials and labor and, although apparently treating these as claims against the obligee, binds the surety to "repay the said 'obligee' all sums of money which the said obligee may pay to other persons on account of work and labor done or materials furnished in or for said contract," etc. Further references to claims and liens "obtained or made against the said obligee for or on account of the prosecution of the work as aforesaid," coupled with a provision

for "written notice," by the filing of a statement within thirty days of such claims, as required by the Act of 1899, suggests contemplation of that act and a purpose to protect such claimants. Unless this was in the contemplation of the parties, there was no reason for the inclusion of those matters, since this was a public building as to which no such lien could attach and no liability arise against the Board or its members. While the phraseology of the bond is confused and may not obligate the surety directly to the materialmen and laborers, it may fairly be construed as being "to this effect," inuring through the principal obligee to their benefit.

Again unlike the Hardison case, we find language in the builders contract, in the form of a "proposition," performance of which in all respects the bond expressly guarantees, which may be construed as an agreement to pay all such claims. "This proposition includes . . . the payment of the architects . . . and everything complete," etc. This may well be read, and *payment for* everything going into the building, including materials and labor.

In *City of Bristol* v. *Bostwick*, 139 Tenn., 304, 309, the Court said that, "It seems never to have been doubted that the obligee of such bonds might bring a suit for the benefit of laborers and materialmen intended to be protected by the bond." The phraseology of the instant bond suggests that this was what was in the contemplation of the parties, that it was the purpose to provide through the obligee for such claimants.

Enough has been said to show that the bond before us is susceptible of being construed as "to the effect" that the obligor "will pay for all the materials and labor

used in said contract," consistently with the practical construction so clearly given the instrument by the parties.

It results that the decree of the Court of Appeals must be reversed, insofar as it adjudges liability against petitioner U. S. Fidelity & Guaranty Company.