ENGINEERED HANDLING SYSTEMS,
INC., Plaintiff,

v.

REPUBLIC BUILDINGS
CORPORATION,
Defendant.

REPUBLIC BUILDINGS
CORPORATION,
Plaintiff,

v.

ENGINEERED HANDLING SYSTEMS,
INC., Defendant.

Nos. 79–2410H, 79–2659H.

United States District Court,
W.D. Tennessee, W.D.

Jan. 3, 1984.

C. Thomas Cates, Memphis, Tenn., for Engineered Handling Systems, Inc.

Jon P. McCalla, Memphis, Tenn., for Republic Buildings Corp.

## MEMORANDUM OPINION AND ORDER

HORTON, District Judge.

This lawsuit arose out of a contract dispute between Engineered Handling Systems, Inc., a Tennessee Corporation, and Republic Buildings Corporation, a New Jersey Corporation with its principal place of business located in Van Wert, Ohio, over what price Engineered should pay Republic for materials used to construct five prefabricated metal buildings. Engineered contends the price should be based upon the total weight of the materials delivered, 951,731 pounds, at a price of approximately $.35 per pound and not upon a total weight of 1,223,853 pounds at $.35 per pound as contended by Republic. Republic contends the price quoted Engineered was, in keeping with industry practice, based upon structure, not the total weight of the materials used and that the price of $429,498 is correct.

The initial complaint in this case was filed in the Chancery Court of Shelby Coun-

ty, Tennessee, on April 30, 1979. That lawsuit was removed to this Court on June 4, 1979. On May 7, 1979, Republic filed a complaint against Engineered in the district court for the Northern District of Alabama. Republic charged that Engineered had breached its contract, dated September 15, 1978, and as a result thereof Republic had suffered damages in the sum of $150,000 plus interest and costs. That lawsuit was transferred to this Court and, by order dated October 24, 1979, the Alabama and Tennessee cases were consolidated for trial. Both lawsuits involve the exact same facts.

Engineered charged that Republic falsely misrepresented to it that the materials necessary to construct the five prefabricated metal buildings would weigh 1,227,193 pounds at a price of $429,498.00 or approximately $.35 per pound. Engineered further charged that the delivered materials in fact weighed 951,731 pounds, a weight variance of 275,462 pounds. Engineered received periodic billings from Republic totaling $332,627.00. Subsequently, Engineered received an invoice requesting an additional $96,871.00 which did not reference a bill of lading but merely stated it was the balance due on the order. Engineered contends the original contract price should be adjusted to compensate for the variance in the weight of materials not delivered.

Republic denied any liability to Engineered and, after filing an answer, filed a counterclaim against Engineered charging breach of contract. In its answer, Republic stated that in the steel building industry these steel buildings are not sold by the pound, but by the structure. Republic charged that Engineered, because of prior dealings between the parties, is estopped in law and fact from contending that the purchase price of the materials for the five prefabricated steel buildings was determined by reference to weight and price per pound of the buildings shipped. Republic also claimed that Engineered profited through savings in its shipping costs and, if it is excused from paying the balance due on its contract, Engineered would be unjustly enriched at the expense of both Republic and its customer. According to Republic, Engineered was quoted a price of $429,498.00 for the materials required for the five steel buildings. That price was not tied to any specific weight of materials. Republic denied that it represented to Engineered the materials would weigh 1,227,193 pounds. According to Republic's acceptance, particulars relating to weight were to be based on "bill of materials to follow." Republic claims the purpose of estimating weights on the purchase orders of buyers of steel buildings is to (1) estimate shipping costs and (2) assure the management of Engineered that the amount of steel necessitated by the project was not excessive.

In its counterclaim, Republic charged that Engineered breached its contract by failing and refusing to pay the agreed purchase price for the buildings and materials sold and shipped and, because of that breach, Republic has been damaged in the sum of $96,871.00, plus interest.

In summary, it is the contention of Engineered that the original contract price should be, because of Republic's false misrepresentation as to weight, adjusted to compensate for the weight of building materials not delivered. It is the contention of Republic that it sells buildings, not building materials by weight, and that the contract called for the delivery of sufficient materials to construct five specified metal buildings and this was done according to the contract. Republic claims it is owed $96,871.00 by Engineered, which claim is by Engineered denied.

*Robert G. Williams*, President, Engineered, testified that he had been doing business with Republic for about fifteen years. He said he started dealing seriously with metal buildings in 1977, when Republic formally made Engineered a dealer. Williams testified that price and weight go hand in glove. He said that all of his conversations with Republic had to do with weight and price of the project. He said price/weight was his only grasp of the possible price of the buildings. He said the materials for this project could not be priced out of the price book. The only way

to keep up with price was on a price per pound basis. Williams stated that he kept up with the cost of the project by figuring the price per pound of metal components going into the buildings. Williams testified that all deliveries on the project were coordinated by Jackie Mae Cash. She reported to him that, after all component parts had been shipped, the Nigerian Brewery project was short about 25% of the total pounds expected. Williams said his first thought was of what was missing from the project and not shipped. Finally, he learned that all components had been shipped. He also stated the project was larger than average and was more complex. He said the measure of performance on the contract was always determined by price per pound of component parts shipped.

*Jackie Mae Cash* testified that she coordinated the project which involved shipping of materials by trucks, railroad cars and containers from the Rainsville, Alabama, plant to the shipping forwarder. She said actual shipments commenced on or about September 13, 1978. Invoices were paid as received and that 951,731 pounds of materials were shipped. When the Rainsville plant reported all materials shipped, she contacted the Ohio plant of Republic and reported the Nigerian project was low on weight. She was informed all materials had been shipped. It was her opinion that a variance of 275,462 pounds or 22.4% of the projected weight of the project and the weight actually shipped was unacceptable. She said the final invoice of $96,871 was tied to no weight, shipping date or bill of lading.

*Paul Klim,* civil engineer, testified that he was vice president in charge of engineering at Republic during the Nigerian project. He said, upon learning of the project, his initial response was that Republic could not comply with the project as it did not have the capacity to do so. He said it was not a standard type project but unique because the construction required was atypical. He testified that estimates on the project were not prepared by the engineer. The project was sold F.O.B. our plant at Rainsville, Alabama, and that Engineered received the project it ordered.

He said weight was not included in the acknowledgement because bills for materials were not available. The acknowledgement stated that bills of materials were to follow. He said Engineered was a dealer and a repeat customer. He said normal weight variances were from 5% to 15% in the industry and no adjustments are made. He said Republic contracted to provide these special buildings for a specified dollar figure, for the dollar amount agreed to, and that was done. There were, he testified, differences in the buildings and in geometrics. Those buildings were deviations from standard design of prefabricated metal buildings. He said the number that sells the job is the price. The cost of materials was 65% to 70% of the cost of the buildings. He said it would have been unusual to give a breakdown on the price of the buildings to a customer. He said the significance of weight had to do with shipment of the materials and the needed capacity for the shipment.

*DeWaine Blackman,* testified that he was employed by Republic from May, 1979, to 1980. He was Sales and Service Manager and participated in the contract with Engineered. He was in Memphis on or about July 6, 1978, to meet with officials of Engineered on the Nigerian Brewery project. The meeting was attended by Blackman and Bob Burgess for Republic and Robert G. Williams and Jackie Mae Cash for Engineered. The purpose of the meeting was to determine what kind of discount Republic could allow Engineered on the Nigerian project. Blackman testified that he discussed the price with Burgess before the meeting. He said Burgess indicated the total weight of the project was closer to 1,000,000 pounds than 1,200,-000 pounds and the price could be discounted to that extent. He said the price was accordingly reduced to $429,498.00.

Blackman said that $429,498.00 was the price reached with Williams on July 6, 1978. He said he filled in the price during that meeting. He testified the per pound price was never mentioned by anyone during that meeting. When an inquiry was made by Jackie Mae Cash about weight, he

said he told her the buildings had been entirely shipped, that they had all the materials for the completed buildings properly designed and Engineered had nothing else coming. He said he told Williams that estimated weights are always higher than actual weights. He said Williams agreed but stated he did not expect the variance to be as high as it is on this job. He stated weight variation is always considered an estimate factor but the main factor is the price for the job. He also testified the accountant used weight to calculate the job out because the job is invoiced in stages. He said weight is important as a way of internally estimating materials needed as there is no other way to estimate and buy materials. On cross-examination, Blackman testified that Burgess told him, before the July 6, 1978 meeting, the buildings would weigh closer to 1,000,000 pounds not 1,200,000 pounds. However, he insisted that he never told Williams anything about the weight. He said Williams requested an adjustment in price. This request was denied. Blackman testified Williams bought buildings at a fixed price. Blackman said weight variances varied from 5% to 20% and on large buildings variances can be up to 32%. He said he had never seen an adjustment of the type requested by Williams in his 21 years in the industry.

*William T. Slayton*, President, Delta Steel Building Company, Dallas, Texas, testified that he had 32 years in the metal buildings industry. He said that buildings are quoted on a lump sum basis or by the building. The weight in this case, he said, related to the figuring of ocean freight. He testified that he does business with Republic. He has never seen a price per pound quoted in the industry. He said a price/weight ratio is used internally. However, it is most unusual to quote weight and price on every invoice. He said steel costs range from 55% to 64% on a job such as this one. Slayton said he had never seen a weight variance contract. He did testify, however, that weight in pricing out a building is fundamental.

As between the parties to this lawsuit, the Court observes that reason has not prevailed. Each party has adopted and each party has maintained a rock hard position throughout this lawsuit. The Court was unsuccessful in its efforts to get the parties, all very able business people, to resolve their differences by negotiation. Engineered maintains that these prefabricated metal buildings are sold by the pound. Engineered claims that it purchased 1,227,193 pounds of metal building components from Republic for a price of $429,498 or approximately $.35 per pound. Engineered claims that delivery on its purchase by Republic was low on weight or short 275,462 pounds, a weight variance of 22.4% which Engineered says is unacceptable. Accordingly, Engineered states emphatically that it does not owe Republic a balance due on its purchase order of $96,871.00. Engineered premises its position in this lawsuit upon two legal theories, (1) construction and interpretation of the contract between the parties, and (2) misrepresentation by Republic of a material fact leading to the making of the contract.

Republic, just as emphatically, argues that these prefabricated metal buildings are sold by the building or structure and not by the pound. Republic maintains that weight variations within a range of 5% to 15% are acceptable in the metal buildings industry and that, in fact, Engineered has accepted such variations in the past without protest. Republic states, and it is undenied by Engineered, that Engineered resold the building to its Nigerian customer at the full contract price, that weight made no difference and Engineered suffered no damages. Republic claims that under the doctrine of substantial performance, it is entitled to the entire balance due under the contract, $96,871.00, with interest. Finally, Republic asserts that if the Court finds any setoff is due against the entire contract price, then Engineered should be required to show what monetary damages, if any, it has suffered.

■ After a careful study of all the evidence in this case, the Court finds the preponderance of the evidence supports, in part, the position of Engineered. The purchase order to Republic Buildings Corpora-

tion dated March 22, 1978, (Ex. 5) clearly shows that Engineered offered to purchase five described metal buildings weighing 1,227,193 pounds for a price of $429,498. While no price per pound was stated in this purchase order, Republic's Acknowledgement, dated September 15, 1978, (Ex. 8) accepts the order. This Acknowledgement notes the purchase price but not the weight as follows:

"Your order indicates a total weight and price, F.O.B. Shipping Point, of Bill of Materials to follow lbs. and $429,498.00, respectfully ..."

In addition, the acknowledgement or acceptance contains the following contract provision:

Our acceptance of your Order is subject to the condition that it states accurately in all respects the correct weight and price, for the material involved, as established by our applicable price and other pertinent publications or estimates furnished by us. If it is determined the items of weight and price in your Order are incorrect, these items shall be appropriately adjusted to conform with such publications or estimates. Should such weight and price be incorrect, we will notify you in writing of the adjusted weight and price, not later than four (4) weeks prior to shipment of materials by means of an Amendment to this Acknowledgement, and it is understood the adjusted weight and price shall govern for contract purposes.

The Court finds, by a preponderance of the evidence, that when Republic added these conditions and terms and substituted the words "bill of materials to follow" in the blank for "pounds" in its acknowledgement it changed, modified and varied, in a material way, the offer to purchase which had been made by Engineered. This changed offer, unobjected to by Engineered, was the offer which was accepted. This offer and acceptance formed the written contract which is now the subject of this lawsuit.

The Court finds credible the testimony of Williams, for Engineered, that he would not have contracted to purchase the materials for a price of $429,498.00 if he had known the weight variance would be 275,-462 pounds. Republic's witness, DeWaine Blackman, admitted that he met with Bob Burgess before his meeting with Williams and Cash on July 6, 1978. At that time, Burgess told Blackman the weight of the buildings would be closer to 1,000,000 pounds than 1,200,000 pounds and the project could be discounted to that extent. Blackman testified, however, that weight was not mentioned during that meeting. Williams and Cash testified weight was discussed during that meeting. The Court finds, from the evidence, that weight must have been discussed during that meeting. Blackman and Burgess met before the meeting to discuss weight and how much price could be discounted based upon the weight adjustment from 1,200,000 pounds to 1,000,000 pounds. This was the meeting when contract terms were discussed and apparently agreed upon. A weight figure of 1,227,193 pounds was later written in the purchase order which Williams signed, dated March 22, 1978. If weight was not material in this contracting process, then the provision in Republic's acknowledgement or acceptance providing for adjustments in weight and price is meaningless. The question before the Court is not what is standard in the steel building industry but what these parties agreed to and contracted for. If steel buildings of this type are sold by the building, as Republic contends, and not by the pound, as Engineered contends, then it is certainly misleading to a buyer for a seller to use weight figures and price/weight adjustment provisions in a contract as in this case. Besides, Paul Klim testified this contract was for special buildings and those buildings were deviations from standard prefabricated buildings.

The Court finds that to effectuate the intentions of the parties to the contract in this case, and implement the weight variances acceptable in the metal building industry, it should construe and interpret the contract and should apply the equitable doctrine of quantum meruit to reach a just resolution of this conflict.

Engineered asserts that in construing the contract and determining its validity, the Court must rely upon the law of Ohio because the forms which make up the contract were executed in Ohio. However, the Court thinks the better view in this case is reflected in a subsequent statement by Engineered that the choice of applicable law is not of particular significance because the case involves established common law contract principles of construction and interpretation, and the laws of Tennessee and Ohio are the same in their areas. *Pavlik v. Consolidated Coal Co.*, 456 F.2d 378 (6th Cir.1972); *Mills-Morris Co. v. Champion Spark Plug Co.*, 7 F.2d 38 (6th Cir.1925); *Alkire v. Cashman*, 350 F.Supp. 360 (1972), *aff'd.*, 477 F.2d 598, *cert. denied*, 414 U.S. 858, 94 S.Ct. 164, 38 L.Ed.2d 108 (1973); *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982); *National City Bank v. Citizens Building Co.*, 74 N.E.2d 273 (Ohio App.1947); *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947); *Pearsall Motors, Inc. v. Regal Chrysler-Plymouth Inc.*, 521 S.W.2d 578 (Tenn.1975); *McNairy v. Thompson*, 33 Tenn. 141 (Tenn.1853); *Earle v. Illinois Cent. R. Co.*, 25 Tenn. App. 660, 167 S.W.2d 15 (1942), *cert. denied*, 317 U.S. 680, 63 S.Ct. 161, 87 L.Ed. 546 (1943). Yet, even if it were pertinent that Ohio law governs this case, that would not affect the Court's decision. The Supreme Court of Ohio has held that "the validity and interpretation of a contract are governed by the laws of the state where the contract was made or is to be performed [lex loci contractus], but the remedies are governed by the laws of the state where the suit is brought. *Alropa Corp. v. Kirchwehm*, 138 Ohio St. 30, 33 N.E.2d 655, *appeal dismissed*, 313 U.S. 549, 61 S.Ct. 1120, 85 L.Ed. 1514 (1941).

This is an action seeking a declaratory judgment. The cases cited above, from Ohio and Tennessee, unanimously hold that the rights of the parties to a contract must be determined by what they have put into their agreement, and that it is the duty of the Court to enforce contracts according to their plain terms.

The contract which the Court has been asked to construe consists of a Purchase Order, Acknowledgment and four attached sheets. By examining the contract as a whole and giving each term its plain and ordinary meaning, and upon the entire record the Court finds this is a price-weight contract in which price was tied to weight.

Engineered is not seeking a declaration that the contract is a nullity; it merely asks the Court to reform the final writing so that it embodies what the parties agreed upon at the time of contracting—that price be based upon weight/poundage. Since the weight on the purchase order, taken from Republic's estimates submitted to Engineered, was incorrect, the price was incorrect. How much then is owed to Republic? Since Engineered has insisted upon its rights under the contract, the contract will not be treated as abandoned; however Engineered's liability to Republic will be determined on the basis of quantum meruit.

■ First, interpretation requires the Court to reform the written contract. Reformation is an equitable process by which the Court corrects a mistake in writing so that it fully and accurately reflects the agreement of the parties. *Bituminous Fire Ins. Co. v. Izzy Rosen's Inc.*, 493 F.2d 257 (6th Cir.1974); *Presidential Ins. v. Strickland*, 187 F.2d 67 (6th Cir.1951); *Dallas Glass v. Bituminous Fire Ins. Co.* 544 S.W.2d 351 (Tenn.1976); *Sherman v. Cate*, 159 Tenn. 69, 16 S.W.2d 25 (1929); *Cromwell v. Winchester*, 39 Tenn. 389 (1859); *Cahal v. Frierson*, 22 Tenn. 411 (1842).

■ Even though the contract is reformed, Republic is entitled to compensation based upon quantum meruit, "as much as the materials are reasonably worth." This doctrine rests on the concept that no one who benefits from the labor or materials of another should be unjustly enriched thereby in his failure to pay for them while he retains possession of them. *Whorley v. Tennessee Centennial Exposition Co.*, 62 S.W. 346 (Tenn.Ch.App.1901). Dan B. Dobbs, *Remedies*, § 4.2 (1973). The argument can be made that this principle is inapposite here because Engineered has made payments for the materials, the par-

ties agreed that price per pound was to be $.35, and that once actual poundage is determined one only need multiply that figure by .35. However, the Court must recognize accepted industry weight variances and in so doing finds that Republic is entitled to some further payment which would have been included in the original assessment of price concerning how much the materials are reasonably worth. In determining this amount the Court looks to the evidence presented. Witnesses for both parties, in their testimony, substantially agreed that some weight variance is acceptable in the steel building industry. Blackman testified weight variances range from 5% to 20% and on large buildings up to 32%. Paul Klim stated variances range from 5% to 15%. Jackie Mae Cash said a weight variance of 22.4% is unacceptable. Blackman said that when he discussed the weight variance with Williams, he, Williams, said he did not expect the weight variance to be this high.

The Court finds, by a preponderance of the evidence in this case, that a reasonable person could reasonably find that a weight variance of 10.4% would be reasonable in the steel building industry and not unreasonable in this case. Jackie Mae Cash's testimony that there was a variance of 22.4% is not denied. Consequently, the Court finds that Engineered owes Republic an additional sum on its contract in this case, figured on the basis of 12% of 1,227,193 pounds or 147,263.16 pounds at $.35 per pound or $51,542.11 plus interest at the current market rate as of the date of this order.

Having determined the matters in this case, as the Court has, it is not necessary for the Court to discuss issues relating to estoppel.

It is therefore by the Court

ORDERED that

1) The complaint of Engineered Handling Systems, Inc., for a declaratory judgment be and the same is hereby granted.

2) Engineered Handling Systems, Inc. must pay to Republic Buildings Corporation the sum of $51,542.11 plus interest at the current market rate which interest shall accrue until the judgment herein is paid.

3) The counterclaim of Republic Buildings Corporation against Engineered Handling Systems, Inc., based upon breach of contract is dismissed.